Argued December 4, 1963, affirmed January 22, 1964

# STATE OF OREGON *v.* GILMORE
### 388 P. 2d 451

*Bernard P. Kelly,* Medford, argued the cause for appellant. On the briefs were Kelly & Grant.

*Alan B. Holmes,* District Attorney, Medford, argued the cause for respondent. With him on the brief was Thomas J. Owens, Deputy District Attorney.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

LUSK, J.

The defendant has appealed from a judgment of conviction under an indictment which reads:

"The said Jesse James Gilmore on the 22nd day of June, 1962, in the said County of Jackson and State of Oregon, then and there being, and then and there being detained in a facility for the custody of persons under charge or conviction of crime, to-wit: in the Jackson County Jail, did then and there unlawfully, wilfully and feloniously escape from official detention, * * *."

The offense charged in the indictment is denounced by ORS 162.324, which provides in part:

"(1) No person shall:

"(a) Knowingly escape from official detention."

Violation of this statute is made punishable as a misdemeanor or by imprisonment in the penitentiary for not more than five years, ORS 162.324 (2).

ORS 162.322 reads:

"As used in ORS 162.322 to 162.326, unless the context requires otherwise:

"(1) 'Escape' means unlawful departure, including failure to return to custody after temporary

leave granted for a specific purpose or limited period.

"(2) 'Official detention' means:

"(a) Arrest by a peace officer or member of the Department of State Police;

"(b) Detention in a facility for the custody of persons under charge or conviction of crime;

"(c) Detention for extradition or deportation; or

"(d) Other detention because the individual detained is charged with or convicted of crime."

The evidence discloses that on June 11, 1962, the defendant was convicted in the Municipal Court of Medford, Oregon, on a charge of being drunk in public in violation of a municipal ordinance. He was sentenced to serve 50 days in jail, confinement to be in the Jackson County Jail pursuant to an agreement between the city of Medford and Jackson county permitting the transfer of municipal prisoners to serve their sentences in the county jail.

On June 22, 1962, the defendant, with other prisoners, was taken from the county jail to the County Farm Home, which is seven miles south of Medford, to work on the farm under the supervision of county employees. Ed Leach, foreman of the farm, receipted for the prisoners when they were turned over to him at the jail by the chief jailer, Deputy Sheriff Paul Hanlin, who told the prisoners that they were to be returned to the jail by four, p.m., of that day. Sometime after lunch the defendant left the farm. He was picked up by the police several days later in Dunsmuir, California, and returned to Medford.

Before discussing the assignments of error, we call attention to the state of the record. The defendant has brought to this court an "Agreed Narrative

Statement", as authorized by ORS 19.074. That section further provides that unless "the appellant has designated for inclusion in the record all the testimony and all the instructions given and requested" (2) (c), he shall, at the time of filing the notice of appeal, serve and file "a plain and concise statement of the points on which he intends to rely" and that "[o]n appeal, the appellant may rely on no other points than those set forth in such statement." (2) (b).

■ The instructions given and some of those requested by the defendant are attached to the "Agreed Narrative Statement," the exhibits are here, but all the testimony and all the instructions requested have not been brought to this court. No statement of the points on which the defendant intended to rely when he took his appeal was ever filed. A strict observance of the terms of the statute would require us to hold that there is nothing before the court, or might justify dismissal of the appeal under the provisions of ORS 19.033 (3). The defect, however, is not jurisdictional and since the state has not seen fit to object, but, instead, has argued the questions raised by the defendant as though they were properly here, we have concluded to treat them in the same fashion.

■ The defendant assigns as error denial of his motion for a directed verdict based on various grounds which will now be considered. It is urged first that violation of a municipal ordinance is not a crime, *City of Portland v. Goodwin,* 187 Or 409, 415, 210 P2d 577, and that the statute only applies to one convicted of or charged with a crime. That is true of subsection (2) (d) of ORS 162.322, but not of subsection (2) (b), which defines "official detention" as "detention in a facility for the custody of persons under charge or conviction of crime." The county jail of Jackson

county is such a facility, even though it may also be used for the imprisonment of municipal offenders.

■ Next it is argued that there is a fatal variance between the indictment and the proof, because the indictment alleges that the defendant escaped from the Jackson County Jail and the proof is that he escaped from the county farm. There are four cases which support the defendant's position—*State v. Chapman,* 33 Kan 134, 5 P 768; *State v. Owens,* 268 Mo 481, 187 SW 1189; *State v. Betterton,* 317 Mo 307, 295 SW 545; and *State v. King,* 114 Iowa 413, 87 NW 282, 89 Am St Rep 371, 54 LRA 853. The courts in these cases applied the rule that a criminal statute must be strictly construed in favor of the accused. That rule does not prevail in this state. ORS 161.050 provides:

> "The rule of the common law that penal statutes are to be strictly construed has no application to the criminal and criminal procedure statutes of this state. Their provisions shall be construed according to the fair import of their terms with a view to effect their objects and to promote justice."

Having in mind the objects of the statute under consideration, we think that the better view is that expressed by the Supreme Court of Maryland in *Johnson v. Warden,* 196 Md 672, 674, 75 A2d 843:

> "As to the first contention, Article 27, Section 149, 1947 Supplement, Annotated Code, page 426, provides that if any person legally detained and confined in the Reformatory shall escape, he shall on conviction be sentenced to such additional period not exceeding ten years as the court may adjudge. There can be no doubt that the applicant was legally confined in the Reformatory at the time of his escape. The mere fact that he was allowed to work outside on a farm in the daytime does not change the nature of his detention or confinement, and

escape from the farm had no legal significance different from an escape from the Reformatory itself."

Similarly, it was said in *State v. Peters,* 69 NM 302, 304-305, 366 P2d 148:

"As we construe the pertinent statute, § 42-1-1, 1953 Comp., the prison honor farm is an integral part and parcel of the state penitentiary, and escape therefrom is an escape from the state penitentiary."

See, also, *Cutter v. Buchanan* (Ky) 286 SW2d 902; *State v. Rardon,* 221 Ind 154, 160-161, 46 NE2d 605; *Saylor v. Commonwealth,* 122 Ky 776, 93 SW 48; *State v. Mead,* 130 Conn 106, 110-111, 32 A2d 273; *Taylor v. State,* 229 Md 128, 182 A2d 52; *State v. McInerney,* 53 RI 203, 206, 165 A 433; *Campbell v. Davison,* 162 Ga 221, 133 SE 468; *Heath v. The State,* 50 Ga App 94, 96, 177 SE 74; *Bradford v. Glenn,* 188 Cal 350, 205 P 449.

We think that escape from the county farm of a prisoner serving a sentence in the county jail is escape from the jail.

██ Another ground of the motion for directed verdict is that lawful custody of the defendant is not shown because there is no evidence of a valid agreement between the city and the county for the use of the county jail for municipal prisoners. Such an agreement is authorized by ORS 169.030. The "Agreed Narrative Statement" recites: "The transfer of municipal court prisoners to serve sentences in the county jail was effected by an agreement between the City of Medford and the County of Jackson, which agreement was not entered in evidence." Since it is to be presumed that official duty was regularly performed, this court considers that the agreement was valid in the absence of evidence to the contrary.

█ Authority to assign prisoners in the county jail to work on the county farm is recognized by statute, ORS 169.120, 169.170, 169.180. The section last cited provides, in substance, that "city convicts" may, with the consent of the city, be assigned to work on public roads or other work of a public nature. The defendant suggests that there is no evidence of such consent and, therefore, that it is not shown that he was in lawful custody while at the county farm. This objection was not made a ground of the motion for a directed verdict and is not open for consideration in this court. We will not pass on questions which were not presented to the circuit court, *Ingalls v. Isensee,* 170 Or 393, 133 P2d 614.

█ The defendant argues that under the construction of ORS 162.322 (2) (b) which we have adopted, the statute is unconstitutional as depriving him of the equal protection of the laws; for, he says, a violator of a municipal ordinance serving his sentence in a county jail who escapes is subject to a possible penalty of imprisonment in the penitentiary for five years, while no such punishment is meted out for the escape of such an offender confined in the city jail. (We note, in passing, that the defendant in this case was sentenced to serve six months in the county jail.) The state answers that there is no discrimination, because persons charged with crime are occasionally for short periods of time confined in a city jail as, for example, when a city police officer arrests for a misdemeanor or a felony, and the statute therefore applies to escape from a city jail. We will not pass on that question. Prior to the enactment of the present statute in 1961 (Oregon Laws 1961, ch 649), former ORS 162.350 (1) obviously did so apply. If the present statute is limited

in operation to places of confinement under the control of the state, it would follow that the legislature has chosen to leave to municipalities the responsibility for enactment and enforcement of suitable legislation upon the subject. Whether the city of Medford has done so, we are not advised. If so, the penalty prescribed would be considerably less than the maximum fixed by ORS 162.324 (2). Assuming that the statute does not apply to escapes from city jails, we think that in view of "the wide scope of discretion," *Savage v. Martin,* 161 Or 660, 694, 91 P2d 273, which the legislative assembly enjoys in exercising its function of classification, it cannot be said that there is no reasonable basis for a distinction between county and city jails in this regard. Counsel for the defendant themselves suggest a conceivable basis for the classification when they say that escape from the county jail "proper" involves a greater breach of security. They would limit the concession, however, to an escape by one who is physically within the four walls of the jail and assert that the classification has no relevance to an escape from the county farm. But this, we think, was a matter for the legislature to determine and the courts are without authority to review the legislative decision. It is not without bearing on the question that under earlier legislation the penalties for escape varied in accordance with the place of confinement from which the escape was made. Escape from the penitentiary or the correctional institution was punishable by confinement in the penitentiary for a period not to exceed three years (former ORS 162.340 (3)), escape from the county jail by imprisonment in the county jail for not more than one year (former ORS 162.370). We are not aware that the power of the legislature thus to discriminate in fixing penalties for crime

has ever been questioned and we think there is no constitutional defect in the statute as construed.

The motion for a directed verdict was properly denied.[①]

After his apprehension the defendant signed a statement, in which he said, in substance, that he was subject to "seizures" and that shortly after arriving at the farm he blacked out and when he recovered consciousness it was dark and he was no longer at the farm; that he returned to Medford intending to go back to the jail, but instead bought a bottle of wine with money that someone gave him and caught a freight train southbound to Dunsmuir.

The court gave an instruction in which it explained the distinction between a confession and an admission and cautioned the jury against considering either unless they were satisfied that the confession or admission was voluntarily made and also against finding a verdict of guilty solely on the basis of such a

---

[①] We have considered and disposed of the motion for a directed verdict, though we would have been entirely justified in ignoring it. The "Agreed Narrative Statement" contains the following recital:

"At the conclusion of the state's case in chief defendant moved for a directed verdict of acquittal which motion was denied."

It also sets forth an instruction requested by the defendant reading:

"I instruct you to return a verdict of not guilty."

Neither the recital nor the requested instruction presents any reviewable question, since neither specifies any grounds for the motion. Woods v. Dixon, 193 Or 681, 683, 240 P2d 520; Ingalls v. Isensee, supra, 170 Or at 398; Mercer v. Parker et al, 124 Or 89, 91, 262 P 948. The brief of the defendant assigns as error the court's denial of a motion for a directed verdict based on various grounds which is quoted verbatim. Obviously, that motion is not a part of the record and is not properly before us. Here, again, the state has made no objection, has at least impliedly conceded that the motion for a directed verdict was made as set forth in the defendant's brief, and apparently desires a decision on the questions raised.

statement. The defendant excepted to the instruction on the ground that the statement was not a confession, and the instruction is assigned as error. Inasmuch as the instruction was obviously cautionary and, as such, favorable to the defendant, it is doubtful whether in any view of the matter it should be deemed reversible error. But aside from this, the statement might rightly be considered a confession. It is exculpatory of defendant's conduct in departing from the farm, but it admits that he knowingly failed to return to the jail. This is an admission of guilt in view of the definition of escape in ORS 162.322 (1). " 'Escape' means unlawful departure, including failure to return to custody after temporary leave granted for a specific purpose or limited period." The instruction complained of was not erroneous.

█ ORS 162.324 (1) provides that no person shall "knowingly escape from official detention." The court in its instructions read the statute to the jury and continued: "The Oregon law just read to you requires that the accused knowingly escaped from official detention. Knowingly, as used in the law, requires that defendant knew what he was about to do and with such knowledge proceeded to do the act charged." Notwithstanding these instructions, the defendant assigns as error the court's refusal to give two requested instructions which, among other things, would have told the jury, in substance, that their verdict should be for the defendant if he did not knowingly depart from the county farm, but later became aware that he had done so and knowingly failed to return to his place of confinement. For the reasons given in discussing the court's instruction on confessions and admissions it would have been error for the court so to instruct. The remaining por-

tions of the requested instructions were fully covered in the instructions given.

Defendant was represented in this court, as in the circuit court, by assigned counsel, who has presented the contentions on behalf of the defendant with earnestness and ability. We are of the opinion, however, that the trial was free from error and the judgment must, therefore, be

Affirmed.