## CHARLES RICHARD FABIAN *v.* STATE OF MARYLAND

[No. 131, September Term, 1967.]

*Decided February 29, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Gerard Wm. Wittstadt* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Robert A. DiCicco, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On March 13, 1967 the appellant was convicted in the Circuit Court for Baltimore County by the court without a jury under a criminal information charging that on January 17, 1966 he "* * * then and there being legally detained and confined in a place of confinement, to wit: the Baltimore County Jail, did escape, in violation of Article 27, Section 139 of the Annotated Code of Maryland, 1957 Ed. * * *." He was sentenced to imprisonment for a term of 2 years to run consecu-

tively with a 4 year sentence previously imposed. He had been convicted of housebreaking and offenses relating to forgery in October 1965, elected to have the convictions invalidated under the decision in *Schowgurow v. State*, 240 Md. 121, and was returned to the Baltimore County Jail to await retrial. It was while he was awaiting the retrial that he allegedly escaped. Valid indictments being returned against him, he was again tried in March of 1966, convicted of uttering and received the sentence of 4 years.

At the trial on the escape charge there was evidence before the court that a bench warrant was issued for the appellant on December 14, 1965 directing the Sheriff to pick him up and bring him to court to answer a presentment for housebreaking. It showed on its face "Cepit Jail (the Baltimore County Jail), December 20, 1965." The appellant was confined in Section B-8 of the Baltimore County Jail in "maximum security." Section B-8 was an area consisting of a day room, where prisoners exercise and shower, and four separate cells, two containing four bunks each and two containing two bunks each. The area was secured by bars on three sides, with the cells on the fourth side. The doors to the separate cells were usually left open until about 9:30 P.M., at which time they were locked to confine the prisoners in the cells to which they were assigned. Prior to 9:30 P.M. all the prisoners assigned to the cells had access to the day room. The bars on one side of the day room were about four feet from a wall of the jail building, leaving a catwalk between the day room and the wall. In the wall were windows leading to the outside of the building. The windows were about three feet by five feet in size and each was covered with ordinary screening. A guard on duty at the jail on January 17, 1966 testified that about 7:10 P.M. all the prisoners assigned to B-8 were within that area and all the bars enclosing the area were intact. About 7:30 P.M. an alarm rang and he went to B-8 and saw that some of the bars along the catwalk were "bent and sawed." He observed two prisoners "in the catwalk standing over the window." He called to them to return inside B-8 and "two or three more men came up." He got them all in the cells and locked the cell doors. He then made a check and found that the appellant and another prisoner were miss-

ing.[1] The window screen had been removed and was lying in the catwalk. Sheets were tied to the window rod and were hanging out the window down the wall to the ground. One sheet had torn off and was on the ground. Another guard was "outside working in the greenhouse" about 7:30 P.M. when he heard "this awful noise." He heard it again, looked out and saw sheets hanging from the window of the jail. He saw a "fellow coming down the sheet, and he was hanging on the window sill, and I hollered at him and he went back in." This guard sounded the alarm. He went to B-8 and the appellant and one other prisoner were missing.

## THE SUFFICIENCY OF THE EVIDENCE

The appellant contends that the evidence was not sufficient to sustain the conviction. He alleges that the evidence at best proved him guilty of prison breach and not escape, that the physical act of escape was not proved and that he was illegally detained or confined.

### Prison Breach or Escape

The appellant urges that since the evidence "definitely showed that force was used, that is the cutting of the bars," in effecting his departure, he was guilty of prison breach and not escape as charged. This argument is predicated upon the common law distinction between a prison breach and escape. In support of his argument the appellant refers, without discussion, to "Wharton's *Criminal Law,* Vol. 2, Chapter XLIX" and Wharton's *Criminal Law and Procedure,* Vol. 3, Chapter 51," but to resolve the question presented by the contention it is necessary that we examine the common law, trace the history of the Maryland statute and review the decisions of the Court of Appeals on the subject.

Although minor offenses were punished under the ancient criminal law, the emphasis was on treason and felonies, punishable by forfeiture of life and lands and goods. Therefore, when

---

1. The other prisoner, on trial with the appellant, changed his plea to guilty during the trial, was found guilty by the court and sentenced to imprisonment for a term of 2 years to run consecutively with a sentence he was then serving.

escape was first considered as an offense, it was the custodian whose wilfullness or negligence made it possible, and not the prisoner, who was deemed to have incurred criminal guilt. The name of the crime committed by the jailer was "escape." As developed in the common law, escape was of three kinds:

> "1. By the person that hath the felon in his custody, and this is properly an escape; and 2. When the escape is caused by a stranger, and this is ordinarily called a rescue of a felon. 3. By the party himself, which is of two kinds, *viz.* 1. Without any act of force, and this is a simple escape. 2. With an act of force, *viz.* by breach of prison." 1 Hale P. C. 590 as quoted in Perkins, *Criminal Law* (1957) Ch. 5, p. 428.

Today the term "escape" is usually used only with reference to the escaper. It is noted, however, that by statute it is a crime to aid or assist in an escape. Md. Code, *supra,* Art. 27, § 139. Considering escape only with relation to the escaper himself, at common law it meant the unauthorized departure of a prisoner from legal custody without the use of force. Prison breach was the unauthorized departure of a prisoner from legal custody accomplished by the use of force. Wharton, *Criminal Law and Procedure* (Anderson) Vol. 3, § 1367-1368. The statute *de fragentibus prisonam,* 1 Edw. II, Stat. 2, A. D. 1307, provided:

> "Concerning Prisoners which break Prison, our Lord the King willeth and commandeth, that none from henceforth that breaketh of Prison shall have Judgment of Life or Member for breaking of Prison only, except the Cause for which he was taken and imprisoned did require such Judgment, if he had been convict thereupon according to the Law and Custom of the Realm, albeit in times past it hath been used otherwise."

According to Lord Coke, having "Judgment of Life or Member" meant "being attained of felony" but the felony was within benefit of clergy. See 1 Hale, 612. The grade of prison breach, therefore, was a felony or misdemeanor according to the grade

of offense for which the party was detained. Hochheimer, *Law of Crimes and Criminal Procedure,* 1st Ed. § 770, p. 475. Hochheimer refers to "force" as an actual breaking, although it may be of the slightest kind "such as accidentally displacing loose bricks while getting over prison walls." Any place where a person was detained on a criminal charge was a "prison," whether "the common gaol, the street, the house of the constable or of a private person." It was immaterial whether the prisoner detained was under accusation or conviction and whether he was guilty or innocent. *Alexander's Br. St.,* Vol. 1, p. 215; *Hochheimer, supra,* p. 475. On January 6, 1810, the General Assembly of Maryland passed Chapter 138 of the Acts of 1809, entitled, "An Act Concerning Crimes and Punishments." The preamble read as follows:

> "Whereas it frequently happens, that men resigning themselves to the dominion of inordinate passion, commit great violations upon the lives, liberties or property of others, which it is the great business of the laws to protect and secure, and experience evinces that the surest way of preventing the perpetration of crimes, and of reforming offenders, is by a mild and justly proportioned scale of punishments; therefore BE IT ENACTED * * * that the offenses herein after mentioned against the government and the supremacy of the laws, shall be punished in manner following * * *."

Section 32 provided:

> "That if any such offender, sentenced to undergo a confinement in the penitentiary, shall escape, he or she shall, on conviction thereof, suffer such additional confinement and hard labour, agreeable to the directions of this act, and shall also suffer such corporal punishment, not extending to life or limb, as the court of oyer and terminer and gaol delivery for Baltimore County shall adjudge and direct."

It is obvious that the statute, limited to those *sentenced* to undergo confinement in the *penitentiary,* did not encompass all the circumstances under which a person committed common law

escape or prison breach by departure from lawful custody. So Chancellor Kilty, stating that the statute *de fragentibus prisonam* was not mentioned in the Act of 1809, "although there is a provision in the 32d section, as to escapes from the penitentiary, and in the 7th section as to fugitive felons—i. e. persons who had been convicted and condemned to serve and labour as criminals," considered that the statute *de fragentibus prisonam* was proper to be incorporated into the common law of Maryland, "subject however to the direction contained in the 11th section of the act aforesaid (Act of 1809, ch. 138), in place of the benefit of clergy." [2] Kilty, *Report of English Statutes* (1811). The Acts of 1837, ch. 320, § 18 retained the limitation of escape to "any offender sentenced to undergo a confinement in the Penitentiary" and provided for "such additional confinement and hard labour, agreeably to the laws of this State, as Baltimore City Court shall adjudge and direct." The Acts of 1927, however, made a material change. Chapter 374 repealed the former statute and re-enacted it to read as follows:

> "If any offender or person legally detained and confined in the Penitentiary, or Jail, or House of Correction, or Reformatory, or Station House, or any other place of confinement, in this State, shall escape * * * he shall, on conviction thereof * * * be sentenced to

---

2. Article 5 of the Declaration of Rights of the Constitution of Maryland provides in relevant part "that the Inhabitants of Maryland are entitled to the Common Law of England * * * and to the benefit of such of the English statutes as existed on the Fourth of July, seventeen hundred and seventy-six; and which, by experience have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity * * *."

Kilty found that "there are in the provincial records, several cases of prosecutions under this statute, in some of which it is particularly named in the indictments. They were in the years 1706, 1720, 1722, 1723, 1724 and 1725; and it appears that in some of them the offenders were sentenced to death." By the 11th section "all claims to dispensation from punishment, by benefit of clergy, shall be and are hereby for ever abolished."

such confinement * * * as the Court may adjudge, for not more than ten years."

The Acts of 1943, ch. 25 clarified the provisions by specifying that the escaper shall, on conviction of escape, be sentenced to confinement "for such additional period, not exceeding ten years, as the Court may adjudge." The Acts of 1963, ch. 157 reduced the sentence for escaping from the Reformatory for Males, if the escape did not involve an assault, to confinement not to exceed three years. The Acts of 1966, ch. 628 made the crime a felony effective June 1, 1966.[3]

We think it clear that the General Assembly in proscribing escape from lawful confinement, as now codified in Md. Code (1967 Repl. Vol.), Art. 27, § 139, did not intend a distinction between departure by force and a departure without force. None of the acts establishing the law as now codified specified the use of force and we deem it significant that chapter 157 of the Acts of 1963 reduced the punishment for escape from the Reformatory for Males if the escape did not involve an assault, leaving the implication that other escapes involving an assault are within the statute. Sufficient force may be shown by the assault of a guard even though no part of the prison building or enclosure is severed or broken. Wharton's *Criminal Law and Procedure,* (Anderson) Vol. 3, § 1368, p. 760. Thus we feel that "escape" as used in Art. 27, § 139 encompasses departure from lawful custody from any place of confinement, by the use of force or without the use of force as known in the common law, and so includes the common law crime of prison breach. Words do not always retain their common law meaning when incorporated in a statute, *Glickfield v. State,* 203 Md. 400, and we do not feel that "escape" in the statute here considered means only the common law "simple escape." The decisions of the Court of Appeals support this view. In *Baker v.*

---

3. Escape or attempt to escape from a convict road force was proscribed by the Acts of 1916, ch. 211, § 3. Codified as Art. 27, § 714, Md. Code (1967 Repl. Vol.); the crime was designated a misdemeanor and the sentence established was not less than 3 months nor more than one half of the entire term for which the escaper or attempted escaper had been previously sentenced.

*State,* 205 Md. 42, the Court rejected the contention that "escape" must be construed in the light of its common law definition, holding in effect that the legislative intent shown was "to create a new crime analogous to an old one." On at least two occasions convictions under the statute were upheld where the offense would have been prison breach at common law. In *Ford v. State,* 237 Md. 266 the prisoner "broke away from his guard and ran out of the courtroom." In *Slagle v. State,* 243 Md. 435, departure from the Clifton T. Perkins State Hospital was effected by the cutting and removal of steel window bars from the room in which the appellant was detained. There is no merit to the contention that the evidence was not sufficient to show that the appellant was guilty of escape as charged on the ground that he was guilty only of prison breach.

## The Physical Act of Escape

The allegation that the physical act of escape was not proved is based on the appellant's claims, first, that the evidence showed merely that he had departed from the maximum security area and did not show that he left the jail building, and, second, that under the statute the escape must be "from those places so enunciated in the statute and not from any place within the enunciated institutions." We do not agree with either premise.

First, it was clear that the appellant was not within the maximum security area after he was found to be missing and it appears that the only way he could leave that area and be missing was through the sawed and bent bars to the catwalk and from there out the window and down the sheets to the ground outside the jail proper.[4] The evidence neither directly nor by inference, supports the argument that he still may have been in the jail building. There was testimony that the appellant had "got out," that he was "brought * * * back" to the jail afterwards, and that "the police said about three hours later they picked both of them up, (the appellant and the other missing prisoner), and * * * kept them over at Headquarters," returning them to Jail the next day "but he (the appellant) wasn't back there that night." We think that the evidence and proper

---

4. The catwalk was apparently closed off. The first guard to arrive on the scene at the sounding of the alarm said, "I opened up the catwalk."

inferences therefrom were sufficient for the trial court to find that the appellant departed from the jail proper.

Second, we think it immaterial whether or not the appellant departed from the jail proper in the face of the evidence clearly showing his departure from the maximum security area and the manner in which it was effected. In discussing the physical act of escape, Perkins, in his *Criminal Law* (1957), Ch. 5, p. 432, said:

> "[A] prisoner may be guilty of an escape from his cell although unable to get beyond the prison walls. In other words the limits within which a prisoner may be required by law to remain, at a certain time, may be the walls of his cell, the walls of his prison, the boundaries of the prison farm, the immediate presence of his guard on the street or elsewhere, the general area of a project on which he is working, such as a road job, or some other. Whatever the limits may be for him at the time a departure therefrom is the physical part of an escape."

We do not find the provisions of the statute under which the appellant was charged to be inconsistent with this statement. The crime proscribed is committed when "* * * any * * * person legally detained and confined in * * * jail * * * or any other place of confinement * * * shall escape * * *." Md. Code, (1967 Repl. Vol.), Art. 27, § 139. Although the appellant was in the jail, he was required to remain within the maximum security area within the jail at the time of his departure. It was a place of confinement and he was confined in that area. By escaping therefrom he violated the statute, whether or not he left the jail building.[5]

---

5. Nor is this rationale inconsistent with the decisions of the Court of Appeals. There is no distinction between an escape from within prison walls and one effected when the prisoner, in legal custody, was physically outside the prison area, *Ford v. State*, 237 Md. 266. An escape from a hospital, *Best v. Warden*, 235 Md. 633, from a reformatory farm, *Johnson v. Warden*, 196 Md. 672, and from the Sandy Point Correctional Camp, *Taylor v. State*, 229 Md. 128, were held to violate the statute. See also *Slagle v. State*, 243 Md. 435.

We think that the evidence was sufficient for the trial court to find the appellant committed the physical act of escape.

*Legal Detention*

By the terms of the statute, to commit the crime of escape the escaper must depart from legal detention or confinement. The appellant alleges that the setting of bail at $10,000 was excessive, being in violation of Article 25 of the Declaration of Rights of the Constitution of Maryland and that upon denial of his motion to reduce the amount of bail he was thereafter illegally detained. The allegation was not raised at the trial below nor in the appellant's brief. It is raised in a "Supplemental Brief" submitted to this Court but there is no provision in the Maryland Rules of Procedure for the filing of a supplemental brief. The point is not properly before us and we need not decide it. Md. Rules, 1085. In any event the record is silent as to the proceedings with respect to the setting of bail and the denial of the motion for reduction as claimed. Although an accused who is charged with an offense, the maximum punishment for which is other than capital, shall be entitled to be admitted to bail, Md. Rules, 777a, we do not find, under the circumstances shown by the record, that bail in the amount of $10,000 was excessive or that the appellant was illegally detained for that reason. We think that the appellant was legally detained at the time of his escape.

Having found that there was evidence legally sufficient to prove that the appellant committed the physical act of escape while legally detained, within the purview of Art. 27, § 139, the judgment of the lower court on the evidence was not clearly erroneous and we may not set it aside. Md. Rules, 1086.

## THE RIGHT TO A PRELIMINARY HEARING

The appellant alleges that he was not afforded a preliminary hearing and contends that he has an "absolute right" to such a hearing. We do not agree. A preliminary hearing, relating as it does to the legality of an accused's detention before his indictment, is not a necessary proceeding in obtaining a valid conviction. *Ferrell v. Warden,* 241 Md. 432, 436. We think it clear that an accused has no "absolute right" to a preliminary hearing whether he be indicted or charged under a criminal in-

formation. See *Timbers v. State,* 2 Md. App. 672; *White v. Warden,* 1 Md. App. 670, 673.

## THE RIGHT TO INDICTMENT

The appellant was prosecuted for the crime of escaping from a place of legal confinement upon a criminal information filed against him. He contends that he had "the absolute right to be indicted by a grand jury." A person charged with the commission of a misdemeanor, before indictment by the grand jury, may be prosecuted upon an information filed by the State's Attorney. If he is charged with the commission of a felony he may not be prosecuted upon an information except upon petition signed by him whereby he waives his right to action by the grand jury. Md. Rules, 708, 709. "An accused need not agree to be tried upon an information when charged with a misdemeanor." *Landaker v. State,* 234 Md. 489. We have found that the offense committed by the appellant was proscribed by the provisions of Code, Art. 27, § 139. The amendment making it a felony did not apply to crimes committed before June 1, 1966 (Acts of 1966, ch. 628, § 2) and the appellant was alleged to have escaped on January 17, 1966. Prior to the Acts of 1966 the grade of the offense was not designated by the legislature and in this State "only those (crimes) are felonies which were such at common law, or have been so declared by statute." *Bowser v. State,* 136 Md. 342, 345, quoting *Dutton v. State,* 123 Md. 373, 378. We have found that the crime of escape as it existed in Maryland on January 17, 1966 was a statutory crime, although analogous to both common law prison breach and escape. Thus the grade of either prison breach or escape at common law did not control whether the statutory offense was a felony or a misdemeanor and not being then declared a felony by the statute, it was a misdemeanor. Being a misdemeanor the appellant could be prosecuted therefore upon an information unless such procedure was prohibited by the Constitution of this State or the federal constitution. "[T]here is no provision of the Maryland Constitution requiring an indictment in any case. Article 21 of the Declaration of Rights merely requires that an accused 'hath a right to be informed of the accusation against him; to have a copy of the Indictment, or Charge in due time (if required) to prepare for his

·defense.' " *State, ex rel Butler v. Warden,* 195 Md. 713, 714. Although the Fifth Amendment to the Constitution of the United States provides in part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on ·a presentment or indictment of a grand jury * * *," this provision has not as yet been held to flow to the states through the Fourteenth Amendment. *Heath v. State,* 198 Md. 455; *United States, ex rel. Morford v. Hocker,* 268 F. Supp. 864 (1967); *State v. Linehan,* 150 N. W. 2d 203 (Minn. 1967); *State v. Crump,* 412 S. W. 2d 490 (Mo. 1967); *Goyer v. State,* 131 N. W. 2d 888 (Wis. 1965). There is no merit to the contention that the appellant was denied a constitutional right to indictment.

## SPEEDY TRIAL

At the trial the appellant moved to dismiss the information on the ground that he had been denied a speedy trial on the charge of escape. In support of the motion there was presented to the court that upon conviction of the appellant of uttering in March 1966 there was "some conversation" between counsel for the appellant at that trial and the assistant State's attorney "that the escape count was not going to be tried, being that Mr. Fabian had been found guilty of the previous charge." There was introduced into evidence a letter dated April 6, 1966 from the appellant's counsel at the previous trial to the appellant relating "that the State's Attorney's Office advised (counsel) that the State does intend to prosecute all the parties that participated in the escape, and that a criminal trial will be held just as soon as the State's Attorney's office can conclude the necessary arrangements." In denying the motion the lower court, noting that the "present State's Attorney has elected to try this case as he has a perfect right to do," said:

> "The Court rules there was no undue delay of trial because the accused was not prejudiced in any way, shape or form by setting the case in for trial at this time. He was confined under a four-year sentence, which even with time off for good behavior or other benefits he would have to serve approximately one-third of his time, which would mean he would have

 to serve time past the present date of this trial under
that conviction; and there has been no undue delay,
and that's the reason I'm overruling your motion."

The appellant urges that the lower court erred in its reasons for denying the motion, claiming that it is not necessary that he show prejudice because "prejudice is presumed or necessarily follows from long delays." He makes no claim that he was otherwise prejudiced.

 The criminal information was filed against the appellant on January 25, 1966 and he was tried on the charge on March 13, 1967. During that period, in March 1966, he was tried and convicted on the uttering charge and was sentenced to imprisonment for a term of four years. In his brief the appellant states that "his former attorney requested an immediate trial for him in April 1966, but that he was led to believe that the State would not prosecute all the parties involved in the 'escape,' particularly him, but that some would be prosecuted when the State could make necessary arrangements." The record before us does not show a proper request for an immediate trial in April 1966 or thereafter or any other effort by the appellant to obtain a trial until the oral motion to dismiss the information on March 13, 1967. Further, the letter of April 6, 1966, introduced in evidence, stated, contrary to the allegation the appellant now makes, that "the State does intend to prosecute all the parties that participated in the escape." It makes no mention of a request for a speedy trial. Also on February 23, 1967 the appellant filed a motion for removal, which after hearing, was denied on March 1, 1967. There is no mention in the motion of a desire for a speedy trial. We cannot find from the record that the appellant made a proper demand for a speedy trial.

 The term "speedy trial" is not defined in either the State or federal constitution and the provision in the constitutions has not been implemented by State or federal statute. So the term is a relative one, leaving the determination as to whether or not an accused has been denied a speedy trial dependent upon the facts of each particular case, recognizing that the varied circumstances surrounding particular cases are innumerable, and, for the main part, unforeseeable. *Jones v. State*, 241 Md. 599.

In *Jones*, at p. 608, the Court of Appeals quoted 22 A. C.J.S. Criminal Law § 467 (4):

"A speedy trial is, in general, one had as soon as the prosecution, with reasonable diligence, can prepare for it; a trial according to fixed rules, free from capricious and oppressive delays, but the time within which it must be had to satisfy the guaranty depends on the circumstances."

It is established in this State that the right to a speedy trial guaranteed by Article 21 of the Maryland Declaration of Rights and Amendment VI to the Constitution of the United States may be waived by the accused. *State v. Long and Nelson*, 1 Md. App. 326. He may waive it by failing to demand a speedy trial, *Harris v. State*, 194 Md. 288, or having demanded such a trial he may waive it by his conduct thereafter, *State v. Murdock*, 235 Md. 116.[6] Thus, as the appellant made no proper demand for a speedy trial, he waived the right to it. We think it apparent that the question of waiver becomes an issue only

---

6. See also *Kirby v. State*, 222 Md. 421, 425, in which it is stated that the right to a speedy trial " * * * may be waived and that it is waived by failing to assert the right in the trial court. Unless that question was raised below, it is not before the appellate court for review—that is it may not be raised for the first time on appeal because, among other reasons, a defendant cannot participate in a trial and save an objection with which to challenge an adverse verdict."

As a rule it is only after a prosecution has been initiated that the issue of a speedy trial can be raised by the defendant. *Price v. State*, 235 Md. 295; *Keyes v. State*, 236 Md. 74; *Reddick v. State*, 219 Md. 95. For a case involving circumstances excepting it from the application of this rule see *Petition of Provo*, 17 F. R. D. 183 (D. C. Md. 1955), aff'd, 350 U. S. 857.

We note that written demand by the accused is required to compel trial within the time specified by the inter-state and intrastate detainer acts Md. Code (1967 Repl. Vol.), Art. 27, § 616A-616S, which are applicable only to prisoners who are serving a sentence and against whom a detainer on a pending charge has been filed. And an accused seeking an immediate trial under the provisions of Md. Rule 709 must file a petition to that effect to invoke the rights thereunder to a trial " * * * within such reasonable time as to accord him a speedy trial."

when there has been a delay in trial in the constitutional sense. An accused is protected only against unreasonable or unnecessary delay. He is not entitled to an immediate trial as the State is entitled to time to prepare for trial with reasonable diligence and also to any reasonably needed time to conform with the trial court's calendar of criminal cases in the actual trial of the cases. *Jones v. State,* 241 Md. 599, 610. Whether the delay is capricious or purposeful and therefore unreasonable or unnecessary compels an evaluation of all the circumstances. We have noted that, exclusive of an express waiver, the accused may waive his right to a speedy trial by failing to demand it or by his conduct, even after a demand. The two must be distinguished, for if the delay is caused by his conduct, rather than a mere failure to assert the right, there may be no delay at all in the constitutional sense, as we feel that only that delay should be computed which may reasonably be charged against the State. But we cannot accept that an accused's inaction in failing promptly to assert his right to a speedy trial *conclusively* waives his right to it, as it is our opinion that the constitutional guarantees are not thus satisfied. We hold, therefore, that when an accused does not make a demand for a speedy trial, he must show that he has suffered actual prejudice caused by the undue delaying tactics of the State. Absent such showing, the right to a speedy trial has not been denied him.[7] See *Bond v. United States,* 233 A. 2d 506, 513 (D. C. App. 1967).

---

7. As we have found that the appellant in the instant case did not make proper demand for a speedy trial we do not reach the question of the necessity to show prejudice when demand has been made. But see *United States v. Banks,* 370 F. 2d 141 (4th Cir. 1966), in which, although there was no basis of a claim of waiver, the Court said, p. 144-145:

"While we cannot justify the District Attorney's inactivity during the ten-month interval between the indictment and Bank's release from state confinement, in appraising the right to a speedy trial we are required to look at the possible prejudice the defendant has suffered as well as to the length of the delay and the reason for it. The delay was not so long as to make a prima facie showing of prejudice. During that interval Banks was not confined on the federal

Both the Court of Appeals and this Court in holding that the right to a speedy trial had been waived by the accused have noted in some cases that no prejudice to him had been shown.[8] And both Courts so holding in other cases have not discussed the matter of prejudice specifically, in all probability, because it had not been raised.[9] In *Dougherty v. State,* No. 120, Initial Term, unreported, filed December 14, 1967, this Court, after finding that "the delay (in trial), if any, lies with the appellant," said:

> "Also, the appellant failed to present any evidence showing that he had been prejudiced, which is necessary where he seeks to invoke the constitutional doctrine of speedy trial."

We think that the rule we have herein enunciated is in no way inconsistent with these cases.

In the instant case the lower court found that the appellant "was not prejudiced in any way, shape or form" by the failure to bring his case to trial until March 13, 1967. We agree. The appellant neither alleged nor showed any prejudice other than that which he claimed "is presumed or necessarily follows from long delays." From the record before us we do not think that

---

charge. There was no loss of witnesses. He suffered no detriment from it." It held that the District Court properly concluded after the hearing on the motion to dismiss that there had been no deprivation of the defendant's constitutional right to a speedy trial. Compare *Jones v. State,* 241 Md. 599.

**8.** See: *Keyes v. State,* 236 Md. 74, " * * * nor does the record show any prejudice to him by the delay;" *State v. Murdock,* 235 Md. 116, cert. den. 379 U. S. 914—"And we are not persuaded by appellee's affidavit * * * that he has suffered any substantial prejudice by the delay;" *Swift v. State,* 224 Md. 300—" * * * there was no showing that these delays were unreasonable or that he had been prejudiced thereby;" *Dubs v. State,* 2 Md. App. 524—"he was in no wise prejudiced thereby."

**9.** See: *Bonner v. Director,* 237 Md. 445; *Price v. State,* 235 Md. 295; *Reddick v. State,* 219 Md. 95; *Harris v. State,* 194 Md. 288; *State v. Long and Nelson,* 1 Md. App. 326; *Allen v. State,* 1 Md. App. 249.

there was prejudice to the person of the appellant by reason of his detention while awaiting trial for he was detained in any event under his conviction. The additional anxiety of waiting for trial on the escape charge may be fairly taken as unconsequential, particularly in the absence of a showing to the contrary. Certainly his anxiety, if any he had, did not cause him to request that his trial be expedited. Nor do we feel that there was any prejudice to his defense. He made no claim that the delay impaired his ability to answer the charge in any way. We do not agree, as the appellant contends, that "prejudice is presumed or necessarily follows from long delays." See *United States v. Ewell*, 383 U. S. 116; *Smith v. United States*, 118 U. S. App. D. C. 38, 331 F. 2d 784. In any event, the lower court found that there was "no undue delay." We find nothing in the record to compel a finding to the contrary.[10] But even assuming that the delay was undue, the appellant waived the right to a speedy trial by not making a proper demand for it and showed no prejudice accruing to him as a result of such delay. We find no error in the denial of the motion to dismiss the indictment.

*Judgment affirmed.*

10. It has been held many times that no constitutional right to a speedy trial is denied, when the delay in trial is because the accused is in a federal prison. *Kirby v. State*, 222 Md. 421, 424 and cases therein cited. It has also been held that imprisonment in a state institution is an acceptable reason, with qualifications, for delay in bringing an accused to trial on federal charges. *United States v. Banks*, 370 F. 2d 141 (4th Cir. 1966). In *Harris v. State*, 194 Md. 288, the defendant was confined in a Maryland institution under process from a Maryland Court with no resulting denial of his right to a speedy trial because he had not demanded it, although there was a lapse of nearly 5 years between indictment and trial. See also *Bonner v. Director*, 237 Md. 445.