Argued June 6, reargued November 13, affirmed
November 20, 1968

## STATE OF OREGON, *Respondent, v.*
## FRANK HUTCHESON, *Appellant.*

447 P. 2d 92

*Gary D. Babcock*, Public Defender, Salem, argued
the cause for appellant. With him on the brief was
Lawrence A. Aschenbrenner, former Public Defender,
Salem.

*Gary D. Gortmaker*, District Attorney, Salem,
argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, J.

The defendant, Frank Hutcheson, was convicted in Marion county of the crime of escape from official detention, and sentenced to a year in the Oregon State Correctional Institution (OSCI). He appeals and contends only that venue of his offense was not in Marion county where OSCI is located, but rather in Clackamas county where his "unlawful departure"[1] occurred.

Defendant was a prisoner of OSCI serving a three-year sentence. On January 27, 1967, defendant was enrolled in the work release program established pursuant to ORS 144.410 to 144.525, and administered by the Corrections Division of the Oregon State Board of Control. Under the program a person confined in a "correctional institution may be granted the privilege of leaving secure custody during necessary and reasonable hours" for the purpose *inter alia* of working at gainful private employment. The Corrections Division is responsible for the supervision of persons enrolled in the work release program and for their quartering in suitable local facilities. ORS 144.420 and 144.460.

The superintendent of OSCI, pursuant to ORS 421.170, recommended that defendant be enrolled in the

---

[1] ORS 162.322:

"As used in ORS 162.322 to 162.326, unless the context requires otherwise:

"(1) 'Escape' means unlawful departure, including failure to return to custody after temporary leave granted for a specific purpose or limited period."

work release program by a memorandum reading in part as follows:

"Therefore, approval is requested for said inmate to be taken to the Clackamas County Jail in Oregon City and assigned to the Work Release Program for housing and such treatment as may be indicated in accordance with ORS 144.450 and revised Board of Control procedures."

The administrator of the Corrections Division, pursuant to ORS 144.450, approved the recommendation as follows:

"Transfer of inmate for the purpose of housing and treatment under the Work Release Program is approved. Please return inmate to the Oregon State Correctional Institution should his status change regarding the Work Release Program. Custody shall remain with the Oregon State Correctional Institution."

As an enrollee in the work release program defendant was employed in Oregon City by a construction company and quartered in the Clackamas county jail. On February 24, 1967, defendant failed to return to his quarters at the end of his work day. He was at large until March 21, 1967, when he was apprehended and returned to OSCI.

We have held that "[v]enue is a material allegation of the indictment by virtue of Art. I, § 11, of our constitution, which guarantees the defendant a trial 'in the county in which the offense shall have been committed.'" *State v. Cooksey*, 242 Or 250, 251, 409 P2d 335 (1965); *State v. Jones*, 240 Or 129, 130, 400 P2d 524 (1965), and cases there cited; see, also, *State ex rel Ricco v. Biggs*, 198 Or 413, 428, 255 P2d 1055, 38 ALR2d 720 (1953).

We held recently, in *State v. Gilmore*, 236 Or 349, 355, 388 P2d 451 (1964), that "escape from the county farm of a prisoner serving a sentence in the county jail is escape from the jail." Although that case did not involve venue, it embraced the theory that a prisoner outside the prison walls for a limited purpose, such as a work detail, is still in constructive custody of the penal institution to which he was sentenced. See authorities cited at 236 Or 354, 355.

At the time of his escape defendant was in constructive rather than actual detention or custody. The controlling question is whether defendant was constructively in the custody of the superintendent of OSCI. The question is answered in a large measure, if not entirely, by *State v. Gilmore*, supra, and by the applicable statutes. ORS 144.490 (2) provides that a person enrolled in the work release program is considered to be an inmate of the penal institution to which he was sentenced. ORS 144.500 (2) provides further that absence of an enrollee from his place of employment or his designated quarters without a reason acceptable to the administrator of the Corrections Division constitutes an escape from official detention.

We think these and other provisions indicate a clear legislative intent to consider a work release enrollee in the constructive custody of the penal institution to which he was sentenced. His enrollment in the program is subject to the rules and regulations promulgated by the administrator of the Corrections Division pursuant to ORS 144.450. The absence of an enrollee from his place of employment or from his designated quarters is not escape from official detention if he has "a reason that is acceptable to the administrator." Thus, if an enrollee offers an excuse for his absence he can be

prosecuted for escape only if the administrator finds the excuse unacceptable.

When the act establishing the work release program is read in its entirety, it seems clear that the legislature intended that a work release enrollee would remain in the constructive custody of the penal institution to which he had been sentenced. The act specifically so states, and was given that construction by the administrator, who specifically provided that "[c]ustody shall remain with the Oregon State Correctional Institution."

It is not clear whether ORS 144.490 (2) was intended to specifically control venue or to control all administrative problems arising out of the work release program, including venue. It is clear that ORS 144.490 (2) is well within the legislative power to regulate venue. We quote a statement of the Supreme Court of Michigan in *People v. Richards*, 247 Mich 608, 226 NW 651, 653 (1929), as follows:

> "The right of an accused to be tried in the jurisdiction where it is alleged he committed crime is ancient and valuable, and should be maintained. But, in case of escape of a prisoner, in confinement under sentence to a state prison, is the mere place of the act to fix the venue, or may the act itself, in its relation to the imprisonment, be declared by law to fix the venue? In order to be guilty of an escape, a prisoner need not break doors or walls; he escapes, if he removes himself from the imposed restraint over his person and volition. In Clinton county the defendant was a prisoner of the state, in fact under confinement, and in law considered in the state prison. It is true that he departed from custody in Clinton county, but his escape was from imprisonment in the state prison, and such escape, and not the mere place of his departure, was the

gist of the offense, and he cannot be heard to say that he has been deprived of a constitutional right by trial in Jackson county."

To the same effect, see *People v. Thomas*, 1 Mich App 118, 134 NW2d 352, 358 (1965), where it was held that an inmate of Southern Michigan prison who escaped in another county while attending under guard his sister's funeral was properly tried in the county in which the prison was located under a Michigan statute authorizing trial "in the courts of the county wherein the administrative offices of the prison may be."

We need not decide whether defendant could have been prosecuted in Clackamas county. We decide only that defendant was in constructive custody of OSCI located in Marion county and that he was properly tried in that county. Our conclusion is in accord with the holdings in other jurisdictions. In *Sweden v. State*, 83 Okl Cr 1, 172 P2d 432, 434 (1946), the court said:

"It is true that there is no direct testimony that the hay field where the defendant was working as a trusty at the time of his escape was in Pittsburg County, but, as we view the record, even though he was temporarily out of the penitentiary as a trusty working in Pittsburg County, or any other county, he was still constructively an inmate of the State Penitentiary at McAlester in Pittsburg County, and any escape while thus an inmate should be prosecuted in Pittsburg County."

See, also, *Dalton v. State*, 388 P2d 875 (Okl Cr 1964), involving a trusty who ran away while out of the penitentiary on a trip with the prison band.

In *Cutter v. Buchanan*, 286 SW2d 902, 903 (Ky 1956), a prison trusty "walked away" in Boyle county while he was "looking after dairy cattle in a pasture, was not under guard and was 'working as a free man

and trusty and he could walk away when he pleased.' "
The court said:

> "This appellant was, at the time he walked away
> or escaped, constructively 'confined' in the reforma-
> tory located in Oldham County, and it was from
> that county 'he was sent out under assignment.'
> We think it is clear that the Oldham Circuit Court
> had jurisdiction to try the appellant for escape."
> 286 SW2d at 904.

To the same effect, see *Clark v. Commonwealth*, 293
SW2d 465 (Ky 1956), cert. den. 353 US 923, 77 S Ct
682, 1 L ed 2d 720. A contrary result has been reached
in *Rice v. State*, 192 S2d 698 (Miss 1966), and *State v.
Dignan*, 114 W Va 275, 171 SE 527 (1933), but we de-
cline to follow them in a case of constructive custody
such as this case.

The judgment is affirmed.