## BRENDA STEWART *v.* STATE OF MARYLAND

[No. 616, September Term, 1973.]

*Decided May 22, 1974.*

The cause was argued before THOMPSON, MOORE and LOWE, JJ.

*Arthur D. Condon* for appellant.

*Arrie W. Davis, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Warren B. Duckett, State's Attorney for Anne Arundel County*, and *John Cantu, Assistant State's Attorney for Anne Arundel County*, on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Brenda Stewart, appellant, an inmate in the House of Correction in Anne Arundel County, was sent, in accordance with Md. Code, Art. 27, § 698, to the University Hospital in Baltimore City for treatment. While in the hospital, she escaped. Trial for the statutory crime of escape, Art. 27, § 139, was held in the Circuit Court for Anne Arundel County. The trial court overruled defendant's timely objections to venue claiming that venue was improperly laid in Anne Arundel County and should have been laid in Baltimore · City, where the physical escape occurred.

Md. Code, Art. 27, § 139 provides as follows:

"If any offender or person legally detained and confined in the penitentiary, or jail, or house of correction, or reformatory, or station house, or any other place of confinement, in this State, shall escape he shall be guilty of a felony and on conviction thereof by the Criminal Court of Baltimore City or by the circuit court of the county in which *the escape takes place,* be sentenced to confinement in the penitentiary . . ." (Emphasis added.)

The short answer to appellant's contention is the departure from University Hospital constituted the crime of escape from custody in a place of confinement, University Hospital, and from constructive custody in the place of incarceration itself, House of Correction. Art. 27, § 139 by its terms permits trial in the county in which the escape takes place. Thus, venue lies both in Baltimore City, where the departure actually occurred, and in Anne Arundel County, where the crime constructively took place.

At the outset of our discussion it is well to distinguish between venue and jurisdiction. Jurisdiction is defined as power over the subject matter and parties to suit, from which power the court derives authority to hear the case on the merits. *Zouck v. Zouck,* 204 Md. 285, 302, 104 A. 2d 573 (1954). Venue refers to a particular place or county in which a court of appropriate jurisdiction may properly hear and determine the case in the first instance. 4 Wharton, *Criminal Law and Procedure* § 1508, at 15-16 (Anderson ed. 1957, Supp. 1974). Simply defined, venue is "the place of trial." W. Blume, *The Place of Trial of Criminal Causes,* 43 Mich. L. Rev. 59, 60 (1944) [hereinafter cited as *Blume*].

The Supreme Court of the United States in *United States v. Cores,* 356 U. S. 405, 407, 78 S. Ct. 875, 877, 2 L.Ed.2d 873 (1958), defined venue as that term is constitutionally embraced by Art. 3, § 2 cl. 3 and the fourth amendment of the United States Constitution:

"The Constitution makes it clear that determination of proper venue in a criminal case

requires determination of where the crime was committed. This principle is reflected in numerous statutory enactments, including Rule 18, Fed. Rules Crim. Proc., which provides that except as otherwise permitted, 'the prosecution shall be had in a district in which the offense was committed * * *.' In ascertaining this locality we are mindful that questions of venue 'raise deep issues of public policy in the light of which legislation must be construed.' *United States v. Johnson,* 1944, 323 U. S. 273, 276, 65 S. Ct. 249, 251, 89 L.Ed. 236. The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place."

In this connection it is interesting to note that the only witnesses testifying at the trial in the instant case were employees of the House of Correction and the appellant. From our observations, the witnesses at trials of cases involving escape are usually confined to employees of the institution and the accused, although at times the apprehending officer may also be called. Thus it would appear that trial in the county in which the institution was located would be more convenient in most cases than trial in the county in which the departure physically took place.

Generally at common law, all offenses had to be inquired into as well as tried in the county where the act was committed. This rule was explicated in England, 4 Blackstone, *Commentaries* 305 (Lewis ed. 1897), and is generally the rule in our country today. 4 Wharton, *Criminal Law and Procedure* § 1508. In the Maryland Constitution, Art. 5 of the Declaration of Rights grants to the inhabitants of this State the common law as it existed in England, but *Kisner v. State,* 209 Md. 524, 529, 122 A. 2d 102 (1956), recites that the common law rule as to venue has not been followed in Maryland since colonial times:

"At common law criminal offenses were tried by a jury of the county where the offense was commit-

ted. 4 Blackstone's Commentaries 303. When an accused chose not to be tried by ordeal or by battle, but by his country, he chose to be tried by a jury of the county in which the offense with which he was charged had been committed. Nevertheless, the Court of King's Bench had the power of directing that the trial was to take place before a jury from an adjoining county when justice required it. *Price v. State,* 8 Gill 295, 296, 306-11. The practice of trying those accused of crime in the county of the commission of the offense was not general in Maryland in early times."

*Kisner* further indicates that the common law requirement has not been enshrined nor embraced in Maryland Constitutions:

"The Constitution of 1776 did not require and succeeding Maryland Constitutions have not required that the trial of an accused take place in the county where the crime was committed." *Id.* at 530.

Art. 20 of the Declaration of Rights to the Maryland Constitution requires trial of facts where they arise. Though not cited in *Kisner,* Art. 20 was construed by *Blume, supra.* In a comprehensive analysis of the constitutional provisions for venue in all the states, *Blume* at 87 interpreted Art. 20 to be an "indefinite" venue and vicinage provision, which established legislative autonomy over venue in Maryland:

"The constitutions of Kentucky, Maine, Maryland, Massachusetts, Pennsylvania, Vermont, and Virginia either require a jury of the 'vicinage,' 'country,' or 'vicinity,' or merely declare it essential to try facts where they arise [Md.]. In these states the courts have shown a tendency to hold that trial in, or a jury of, the county where the crime was committed is not required. Venue in criminal cases is largely, if not entirely, under legislative control." *Id.* at 93.

Thus, in Maryland, there is no constitutional right to be tried in the county where the crime was committed.

The express terms of § 139 authorize trial in the county where the escape actually occurred; however, presently at issue is whether venue would also lie in the county where the institution was sited.

In an unbroken line of cases in Maryland, it has been held that, under § 139 and its statutory progenitors, there is no legal distinction between escape from actual or from constructive custody. In *Fabian v. State,* 3 Md. App. 270, 280, n. 5, 239 A. 2d 100 (1968), we stated:

"There is no distinction between an escape from within prison walls and one effected when the prisoner, in legal custody, was physically outside the prison area, *Ford v. State,* 237 Md. 266. An escape from a hospital, *Best v. Warden,* 235 Md. 633, from a reformatory farm, *Johnson v. Warden,* 196 Md. 672, and from the Sandy Point Correctional Camp, *Taylor v. State,* 229 Md. 128, were held to violate the statute. See also *Slagle v. State,* 243 Md. 435."

Mentioning Fabian, this Court in *Shifflett v. State,* 4 Md. App. 227, 229, 242 A. 2d 182 (1968) reached the same result by different language:

". . . [H]e contends that the escape conviction based on the statute, Section 139 of Article 27 of the Code, was improper since he did not escape from the Baltimore County jail, but from the office of the Chief Clerk of the Baltimore County magistrate's court, this not being a place of confinement within the meaning of the statute. We find no merit in this argument. The jail is expressly included as a place of confinement under the statute. As appellant was lawfully under sentence and committed to the jail, the fact that he was physically beyond its confines when he escaped does not immunize him from prosecution under the statute."

The Court of Appeals in *Johnson v. Warden,* 196 Md. 672, 75 A. 2d 843 (1950), denied application for leave to appeal from a conviction for escape under a predecessor statute to Section 139. The Court held that though actual departure occurred from a private farm outside the confines of the. prison and while the prisoner was without guard, the crime was constituted by escape *from* the State Reformatory:

"There can be no doubt that the applicant was legally confined in the Reformatory at the time of his escape. The mere fact that he was allowed to work outside on a farm in the daytime does not change the nature of his detention or confinement, and escape from the farm had no legal significance different from an escape from the Reformatory itself." *Id.* at 674.

The Court in *Best v. Warden,* 235 Md. 633, 634-35, 201 A. 2d 490 (1964) followed the rule of *Johnson v. Warden* and found escape from University Hospital to constitute escape from a place of confinement:

"The argument that the applicant did not commit the crime of escape since he was left unguarded and the hospital was not a 'place of confinement', is answered in *Johnson v. Warden,* 196 Md. 672, 75 A. 2d 843 (1950). There this Court held that a prisoner was legally confined in the State Reformatory within the meaning of what is now Art. 27, sec. 139, even though he was allowed to work outside, unguarded, on a private farm, and that, when he escaped from the farm, he was subject to punishment for escape from the Reformatory. The same reasoning applies in the instant case, and thus the applicant was properly convicted of escape under Art. 27, sec. 139. Cf. *Taylor v. State,* 229 Md. 128, 182 A. 2d 52 (1962)."

Escape from Clifton T. Perkins State Hospital was held to be escape from a place of confinement within the terms of Section 139, in *Slagle v. State,* 243 Md. 435, 438, 221 A. 2d

641 (1966). Using a similar analysis, this Court in *Beasley v. State*, 17 Md. App. 7, 11, 299 A. 2d 482 (1973), affirmed the conviction of a prisoner who, while incarcerated at Maryland Correctional Camp Center, at Jessup in Anne Arundel County, escaped from a work detail. We recently stated in *Robinson v. State*, 18 Md. App. 438, 441-42, 306 A. 2d 624 (1973):

> "§ 139 is a broadly based statute embracing within its purview *all escapes* from lawful confinement, whether the escape was initiated from within or without the walls or other boundaries of a penal facility; whether the confinement was actual or constructive; whether it was effected with or without force, and without regard to the circumstances of confinement if the detention was under color of law."

In summary, the case law in Maryland recognizes constructive custody and holds it to be legally indistinguishable from actual custody. Therefore, within the terms of § 139, the crime of escape from custody "takes place" (1) in the county where the physical departure occurs, and (2) in the county of the penal institution from which the constructive departure occurs.

In Mississippi and West Virginia, constitutional provisions, for trial where the offense was committed, have been interpreted to permit trial only in the county where the escape in fact occurred. Holding actual venue to be constitutionally required, these states reversed convictions obtained in counties where the correctional institutions were located. *Rice v. State*, 192 So. 2d 698, 699 (Miss. 1966) and *State v. Dignan*, 114 W. Va. 275, 171 S. E. 527, 528 (1933). The Supreme Court of Oregon has expressly refused to follow the line of reasoning of *Rice* and *Dignan*. *State v. Hutcheson*, 251 Or. 589, 447 P. 2d 92, 94 (1968).

The development of constructive venue in Oregon is interesting. The Supreme Court of Oregon in *State v. Gilmore*, 236 Or. 349, 388 P. 2d 451, 454 (1964) followed what it termed the "better view" of *Johnson v. Warden, supra,*

354

and held that escape from without a correctional institution constitutes escape from constructive custody and, thus, constitutes the crime of escape from the institution. Relying on this case and on local statutes similar to those in Maryland, the Court in *State v. Hutcheson*, 447 P. 2d at 93, held venue to lie where the correctional institution was sited. Relying upon *Hutcheson*, the Oregon Intermediate Appellate Court, in *Kneefe v. Sullivan*, 465 P. 2d 741, 743 (Or. 1970), held that the crime of escape could be tried either where the escape actually took place or where the institution was located. We think the Oregon approach is more sound from a practical point of view as well as from legal theory.

*Judgment affirmed.*