## TAYLOR *v.* STATE

[No. 336, September Term, 1961.]

*Decided June 15, 1962.*

Submitted to BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

Submitted on brief by *Thomas J. Mooney, III,* for the appellant.

Submitted on brief by *Thomas B. Finan, Attorney General, William J. McCarthy, Assistant Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *James W. McAllister, Assistant State's Attorney,* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The defendant-appellant was charged under a two-count indictment with the crime of escape. He pleaded guilty and was sentenced to an additional term of imprisonment of one year. At the time of his escape he had served nineteen months of a sentence of three years' imprisonment in the House of Correction for receiving stolen goods. On this appeal he contends (a) that his plea of guilty was not made with a clear and intelligent understanding of its meaning, nature and effect and (b) that the facts adduced after the entry of his plea and before the imposition of sentence were not sufficient to support a conviction for the offense for which he was indicted.

The first count of the indictment charges escape from "the house of correction and other place of confinement" as a statutory offense; the second charges escape from lawful custody without any reference to a statute, apparently as a common law crime. The first count is in the language of, and evidently was drawn under § 139 of Article 27 of the Code (1957), though it does not refer to any specific statute. The first count is the only one which we think it necessary to consider. Escape from the House of Correction was the only offense specifically mentioned during the arraignment of the defendant and at the time of his entering his plea of guilty.

The appellant's statement of facts (accepted by the State) says that the appellant was transferred from the House of Correction to first one and then another "Correctional Camp"

for heavy construction and road work, that after he had been transferred to the second of these (Sandy Point), he was placed on a work detail at the University Hospital [in Baltimore] and that while so assigned, he escaped.

The exact relationship between the Correctional Camps (including the one at Sandy Point) and the House of Correction is not shown by the record or briefs before us, nor is it shown (so far as we can discover) by any statute. No statute treats them as separate places of confinement, as the statutes do treat the Penitentiary, the House of Correction, the Reformatory for Males and other institutions. It would appear that the Sandy Point Correctional Camp was merely an adjunct of the House of Correction.[1] We therefore think that the prisoner continued to be under confinement at that institution and escape therefrom would, therefore, constitute escape from the House of Correction. *Johnson v. Warden*, 196 Md. 672, 75 A. 2d 843.' In that case a prisoner committed to the Reformatory for Males was assigned to work outside on a farm and escaped while on this assignment. His escape was held to have no legal significance different from an escape from the Reformatory itself.

With regard to the defendant's first contention we think it clear that he, a man forty-one years old, understood the nature of the offense with which he was charged and that he entered his plea of guilty voluntarily. We think that it was properly accepted. *Lowe v. State*, 111 Md. 1, 73 A. 637; *Brown v. State*, 223 Md. 401, 164 A. 2d 722. The appellant does not assert any claim based upon the lack of counsel. He said that he did not want to arrange to get counsel (at his own expense, we infer), and he did not suggest that he was unable to do so. Here we see no need for the assistance of counsel, such as there was in *Carnley v. Cochran*, 369 U. S. 506, 82 S.

---

1. We are informed that as an administrative matter all prisoners assigned to Correctional Camps have been originally committed to the House of Correction or have been transferred to it from other institutions before being classified and assigned to such camps and that they continue to be carried on the rolls of the House of Correction while assigned to such camps.

Ct. 884 (1962). The facts here were fairly simple and the law not complex. The defendant himself thus stated the essential facts when asked why he committed the offense: "Well, I was transferred from one camp to another, your Honor, and I couldn't get a chance to see my mother and got a little worried and I left."

We find the appellant's contention that the facts alleged by the State with regard to the offense would not support a charge under § 139 of Article 27 not to be well founded. We have already stated our view that § 139 is applicable. The defendant claims that any prosecution should have been under either § 714 or § 726 (§ 725 was obviously intended) of Article 27 of the Code (1957). These deal, respectively, with escapes from county or State convict road forces. We find no basis for a contention that at the time of the escape, the defendant was even assigned to road work; on the contrary he was on detail at a hospital.[2] We may add that the defendant concedes that he was not given a sentence in excess of the penalty which could have been imposed under either § 714 or § 725. (Indeed, under the latter the penalty could be the same as under § 139.)

*Judgment affirmed.*

---

2. We gather that men assigned to the Correctional Camps are not necessarily assigned to or engaged in road work. See Maryland Manual (1961-62), p. 89.