(48 P.3d 686)

No. 87,240

STATE OF KANSAS, *Appellee*, v. MICHAEL STEVEN BRIGGS, *Appellant*.

Opinion filed June 28, 2002.

*Cory D. Riddle*, assistant appellate defender, and *Randall L. Hodgkinson*, deputy appellate defender, for the appellant.

*Ty Kaufman*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before GERNON, P.J., PIERRON and KNUDSON, JJ.

PIERRON, J.: This case comes to us on stipulated facts. Michael Steven Briggs allegedly failed to comply with the terms of his felony probation and appeared for a revocation hearing on January 13, 2000. After hearing the evidence, Judge Carl B. Anderson, Jr., revoked Briggs' probation and ordered imposition of his original incarceration sentence. After the hearing, Judge Anderson told Briggs: "Have a seat in the hallway, Mr. Briggs, we'll call for an officer. Consider yourself in custody." Judge Anderson intended to have Briggs sit in the seating in the east/west hallway and to wait there until a law enforcement officer arrived to take him to the jail.

The McPherson County District Court does not have full-time on-site security. The court's normal procedure is to have the defendant sit in the hallway. While the defendant waits, the court calls the McPherson County Law Enforcement Center and has a law enforcement officer come to the courthouse. Upon arrival, the officer places the defendant in handcuffs and transports the defendant to the county jail.

After his instructions from Judge Anderson, Briggs decided he did not like the consequences of waiting for law enforcement officers to arrive, and he fled the courthouse. Authorities captured Briggs approximately 1 month later, and he was charged with four counts of criminal threat (regarding his capture), one count of felony theft, one count of motor vehicle burglary (theft and burglary were the probation violations), and one count of aggravated escape from custody (leaving after the probation revocation hearing). Pursuant to a plea agreement, Briggs pled nolo contendere to one count criminal threat and one count felony theft. The parties agreed to a bench trial on stipulated facts for the aggravated escape from custody charge. The State dismissed the remaining charges.

After reviewing the stipulation of facts, the trial court found Briggs guilty of aggravated escape from custody. Briggs appeals his aggravated escape from custody conviction. We affirm.

Briggs contends there was insufficient evidence to support his conviction for aggravated escape from custody. He argues he was never in custody.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000).

The crime of aggravated escape from custody under K.S.A. 2001 Supp. 21-3810 requires that the defendant must have been in "lawful custody" at the time of the escape. The question of whether a defendant was in lawful custody is a question of law for the trial judge to determine. *State v. Mixon*, 27 Kan. App. 2d 49, Syl. ¶ 5, 998 P.2d 519 (2000). At the hearing on Briggs' motion to dismiss, the trial court held that Judge Anderson's order rendered Briggs in "custody" under either K.S.A. 2001 Supp. 21-3809(b)(1) as "any other detention for law enforcement purpose" or K.S.A. 22-2202(9) as "the restraint of a person pursuant to an arrest or the order of a court or magistrate."

In this case, Briggs was convicted of aggravated escape from custody under K.S.A. 2001 Supp. 21-3810(a)(1) for escaping while

held in lawful custody upon a charge or conviction of a felony. K.S.A. 2001 Supp. 21-3809(b)(1) defines "custody":

" 'Custody' means arrest; detention in a facility for holding persons charged with or convicted of crimes or charged or adjudicated as a juvenile offender, as defined in K.S.A. 38-1602, and amendments thereto, where the act, if committed by an adult, would constitute a misdemeanor; detention in a facility for holding persons adjudicated as juvenile offenders; detention for extradition or deportation; detention in a hospital or other facility pursuant to court order, imposed as a specific condition of probation or parole or imposed as a specific condition of assignment to a community correctional services program; commitment to the state security hospital as provided in K.S.A. 22-3428 and amendments thereto; or any other detention for law enforcement purposes. 'Custody' does not include general supervision of a person on probation or parole or constraint incidental to release on bail."

"Custody" is also defined in K.S.A. 22-2202(9) as "the restraint of a person pursuant to an arrest or the order of a court or magistrate."

This case presents the question of whether Judge Anderson's order to Briggs, after revoking his probation ("Have a seat in the hallway, Mr. Briggs, we'll call for an officer. Consider yourself in custody."), put Briggs in lawful custody for purposes of a conviction for aggravated escape from custody. Answering this question requires an interpretation of the above-quoted statutes. Interpretation of a statute is a question of law, and our review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. See *State v. Miller*, 260 Kan. 892, 895, 926 P.2d 652 (1996).

Several Kansas cases have addressed being in "custody," but none are directly on point. In *State v. Logan*, 8 Kan. App. 2d 232, 654 P.2d 492 (1982), *rev. denied* 232 Kan 876 (1983), Logan went to the police station to inquire why officers were looking for him. The uniformed desk officer, who knew Logan and knew of Logan's arrest warrant, told Logan he was under arrest. Unfortunately, the officer had a cast on his leg and was only able to walk with crutches. As the desk officer, using the crutches, approached Logan, Logan told him, "Ain't no cop gonna arrest me like that." After being told by the officer not to leave, Logan departed in his car but was ap-

prehended soon thereafter. He was convicted of obstructing official duty.

On appeal, Logan argued he should have been charged with aggravated escape from custody instead of obstruction. The State responded that Logan could not be charged with escape because he was never "in custody" under K.S.A. 21-3809 and K.S.A. 21-3810. The *Logan* court relied upon several cases demonstrating that in order for a defendant to be "in custody," the defendant must be arrested which entailed actual or constructive seizure of the defendant. See *State v. Parks*, 5 Kan. App. 2d 644, 645, 623 P.2d 516 (1981); *State v. Williams*, 4 Kan. App. 2d 651, Syl. ¶ 3, 610 P.2d 111 (1980); *State v. Greenburg*, 4 Kan. App. 2d 403, 405, 607 P.2d 530, *rev. denied* 228 Kan. 807 (1980). The *Logan* court held:

> "In the light of the foregoing, it is clear that appellant was never in custody. Although the desk officer demonstrated authority to detain appellant and his intent to do so, due to his physical condition he could not impose significant restraint on appellant's ability to leave. The officer never touched appellant. In his own words, he attempted to arrest appellant—but was unable to do so. Appellant could not have been convicted under the escape statute. He was properly charged with obstructing official duty." 8 Kan. App. 2d at 235.

Both parties cite several escape cases where there was no question a defendant was already in custody but was not restrained or under constant supervision at the time of the escape. See *State v. Pichon*, 15 Kan. App. 2d 527, 811 P.2d 517, *rev. denied* 249 Kan. 778 (1991) (prisoner at Lansing Correctional Institution escaped from community center where prisoners were taken to play volleyball); *State v. Garrett*, 235 Kan. 768, 684 P.2d 413 (1984) (defendant escaped from community corrections facility); *State v. Pritchett*, 222 Kan. 719, 720, 567 P.2d 886 (1977) (defendant in custody of youth center escaped from hospital after receiving treatment); *State v. Jones*, 9 Kan. App. 2d 106, 673 P.2d 455 (1983) (defendant in county jail awaiting trial escaped from hospital after receiving treatment).

The *Pichon* court summarized a clear intent on the part of the legislature to not limit "escape" to situations where a defendant

committed to a confinement facility, such as a prison or jail, flees confinement:

"Custody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained. There is no requirement that the prisoner be constantly supervised or watched over by prison officials. The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way." 15 Kan. App. 2d 528, Syl. ¶ 9.

Briggs relies on *Logan* in arguing that he was never in custody because no significant restraint had been imposed on his ability to leave. He contends that just like the police officer's command in *Logan*, the district court's order that he was in custody was insufficient to place him in custody.

Briggs also argues he does not fall within the catchall clause of "custody" in K.S.A. 2001 Supp. 21-3809(b)(1) involving "any other detention for law enforcement purposes." He maintains that to allow an escape from custody conviction to stand would isolate the catchall clause from the rest of the statute where an institution had not yet even taken actual or constructive control over him and he had not been substantially detained by law enforcement. Briggs suggests Judge Anderson's order did not put him in custody, rather it is law enforcement's execution of the order that creates the custody situation. Consequently, if it was a crime for Briggs to leave the courthouse, it was obstruction of law enforcement's execution of the order. Briggs characterizes Judge Anderson's order as a warrant and that a person is not "in custody" until law enforcement execute the warrant. Briggs contends his act of leaving the courthouse made it more difficult for law enforcement to execute Judge Anderson's order, as contemplated by the crime of obstruction of official duty.

The State responds that Judge Anderson's order was as explicit as possible when he told Briggs: "Consider yourself in custody." The State argues there is no question as to Judge Anderson's intent and, consequently, the order brought Briggs squarely within the meaning of "custody" under either K.S.A. 2001 Supp. 21-3809(b)(1) or K.S.A. 22-2202(9). The State contends *Logan* is clearly distinguishable because here the order came from a district

court judge while Briggs was in the judge's courtroom and not from a law enforcement officer while at a police station as was the case in *Logan*. The State also argues Judge Anderson had the inherent power to administer justice and to enforce obedience to the law and that placing Briggs in custody was the exercise of such power.

The State also responds that Briggs' action does not constitute obstruction of official duty. The State contends the obstruction statute, K.S.A. 21-3808, clearly contemplates action by law enforcement officers, not a judge. The crime of obstruction under K.S.A. 21-3808(a) is "knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty."

After reviewing the record, we conclude the evidence presented in the stipulation of facts was sufficient to support Briggs' conviction for aggravated escape from custody. Certainly, Judge Anderson's intention was to place Briggs in custody for transportation to the county jail. Contrary to Briggs' argument, this was not a situation where the judge's order was similar to a warrant. Any purpose of a warrant—to bring Briggs before the court—had already had been effectuated prior to Judge Anderson's order. See *Black's Law Dictionary*, 1585 (6th ed. 1990) ("Arrest warrant" defined as court order which "commands law enforcement officer to arrest a person and bring him before magistrate").

Further, Briggs was in the custody of the court for probation revocation purposes, and the court had never released him from that custody. Briggs stood in Judge Anderson's courtroom and was informed by a district court judge, not a police officer, that he was in custody. *Logan* is clearly distinguishable based on the courtroom setting and the command coming from a judge. Briggs should have reasonably understood that he was not free to leave because he was in the custody of the court. The fact that Briggs could not immediately be taken to jail does not alter his custodial situation. Briggs was not free to go. Similar to the escape cases cited herein, there is no evidence Judge Anderson intended to abandon Briggs and allow him to go on his way. Rather, Judge Anderson exercised

actual or constructive control over Briggs and restrained his liberty by ordering him to the hall to await law enforcement officials. Briggs was in custody under either K.S.A. 2001 Supp. 21-3809(b)(1) or K.S.A. 22-2202(9).

Affirmed.