816 A.2d 88

Leroy Carl BOFFEN

v.

STATE of Maryland.

No. 16 Sept. Term, 2002.

Court of Appeals of Maryland.

Feb. 12, 2003.

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Annabelle L. Lisic, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BATTAGLIA, Judge.

On November 9, 2000, petitioner Leroy Carl Boffen (hereinafter "Boffen") appeared in the Circuit Court for Wicomico

County to be sentenced on two counts of credit card offenses for unlawfully obtaining goods "by falsely representing, without the consent of the cardholder that he was then and there the holder of a credit card...." During the sentencing, the judge stated that, "[t]he sentence under count number one is fifteen years to the Division of Correction." Before the judge could go any further, Boffen interrupted him, bolted from the courtroom, and ran out onto the street where he was eventually arrested. The issue before us is whether this conduct constitutes first degree "escape" under Maryland law. Under the circumstances of this case, we hold that it does not.

## I. Background

On October 21, 1999, a statement of charges was filed in the District Court of Maryland sitting in Wicomico County, charging Boffen with, among other things, two counts of allegedly "unlawfully us[ing] and disclos[ing] a [credit card] number." Later that day, Boffen was arrested, and in a "Commitment Pending Hearing," the Wicomico County Detention Center was "commanded to receive from any officer the body of [Boffen]." About an hour later, in a "Release from Commitment," Boffen was ordered released on a $7,500.00 bond. That bond was later revoked, and in another "Commitment Pending Hearing" dated December 16, 1999, the Detention Center was "commanded to receive from any officer the body of [Boffen]." Thereafter, the case was transferred to the Circuit Court for Wicomico County where a criminal information was filed, charging Boffen with, among other things, the two credit card offenses with which he had been previously charged in the District Court.

On March 31, 2000, the Circuit Court conducted a bail review hearing and ordered that bail be set at $15,000. The next day, the Commissioner for Wicomico County signed a bail bond for that amount. On April 4, 2000, a "Release from Commitment" was filed with the Circuit Court, commanding the Detention Center to "release [Boffen] subject to the following conditions/restrictions: NONE."

On August 21, 2000, after a jury trial, Boffen was convicted in the Circuit Court for two counts of unlawfully obtaining goods "by falsely representing, without the consent of the cardholder that he was then and there the holder of a credit card." After the conviction, the court ordered that Boffen remain free on bond pending sentencing, which occurred on November 9, 2000. During sentencing, the Circuit Court Judge stated, "[T]he sentence under count number one is fifteen years to the Division of Correction...." Before the judge could continue, however, Boffen exclaimed, "No, Your Honor," fled from the courtroom, and ran out of the courthouse and onto the street in downtown Salisbury. During Boffen's absence from the courtroom, the judge continued with the sentencing, imposing an additional fifteen years imprisonment for the second count of his conviction, to run consecutive to the fifteen year sentence for the first count. Meanwhile, Boffen was arrested on the sidewalk adjacent to the Route 50 side of the courthouse by a deputy sheriff who had been in the courtroom and had pursued Boffen.

Boffen was later charged with having "knowingly escape[d] from Wicomico County Detention Center, a place of confinement." Thereafter, a criminal information was filed with the Circuit Court charging Boffen with first degree escape, alleging that on November 9, 2000, Boffen "did knowingly escape from the Division of Corrections, a place of confinement" in violation of Maryland Code, Article 27 § 137 (1957, 1996 Repl.Vol., 2000 Supp.).[1] Boffen was convicted of that charge on May 2, 2001, after a non-jury trial, and was sentenced to seven years and six months imprisonment to run consecutive

---

1. We refer to the escape statute as it existed on November 9, 2000, the date of Boffen's flight from the courtroom. Section 137 stated in its entirety as follows:

 (a) In general.—A person may not knowingly escape from a place of confinement.
 (b) Applicability.—(1) This subsection applies to a person:
 (i) Temporarily released from a place of confinement; or

to his two consecutive fifteen year sentences for the underlying credit card offenses.

The judge presiding over the escape trial noted that, although no statement remanding Boffen to custody had been made by the original sentencing judge, Boffen had been in the "constructive custody [of the Detention Center], at least from the time of his conviction forward," based on Maryland Rule 4–349(a) and (b),[2] and further concluded that the Detention Center is a "place of confinement" under the escape statute. Alternatively, the trial judge concluded that Boffen was in the constructive custody of the Division of Correction when he fled. According to the judge who presided over the escape trial, Boffen was "lawfully under sentence," "committed to a specific institution,[the Division of Correction]" and subject to restrictions defining the boundaries of his freedom when the sentencing judge stated, "[T]he sentence under count number one is fifteen years to the Division of Correction."

Boffen appealed to the Court of Special Appeals, which affirmed in an unreported opinion. The intermediate appel-

---

(ii) Committed to home detention under the terms of a pretrial release or by the Division of Correction under Title 3, Subtitle 4 of the Correctional Services Article.

(2) A person may not knowingly:

(i) Violate any restriction on movement imposed under the term of temporary release or a home detention order or agreement; or
(ii) Fail to return to a place of confinement under the terms of temporary release or a home detention order or agreement.

(c) Penalty.—Except as provided in § 137A of this subheading, a person who violates this section is guilty of the felony of escape in the first degree and on conviction is subject to a fine not exceeding $20,000 or imprisonment not exceeding 10 years or both.

2. Maryland Rule 4–349(a) states in part that "[a]fter conviction the trial judge may release the defendant pending sentencing or exhaustion of any appellate review subject to such conditions for further appearance as may be appropriate." Rule 4–349(b) states in part: "In determining whether a defendant should be released under this Rule, the court may consider the factors set forth in Rule 4–216(f) and, in addition, whether any appellate review sought appears to be frivolous or taken for delay. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."

late court reasoned that Boffen "was in constructive custody [of the Division of Correction] from the instant that [the original sentencing judge] stated '[t]he sentence under count number one is fifteen years to the Division of Correction.'" The court determined that, [w]hen [Boffen] fled the courtroom, he had been committed to the custody of the Division of Correction."

We granted Boffen's Petition for Writ of Certiorari, *Boffen v. State*, 369 Md. 178, 798 A.2d 551 (2002), to consider the following question, which we have rephrased: [3]

Did the trial court err in concluding that Boffen had committed first degree escape when, on November 9, 2000, he appeared in a courtroom for sentencing for two counts of credit card offenses after having been free on bail, and when the judge stated, "[T]he sentence under count number one is fifteen years to the Division of Correction," Boffen interrupted him and fled from the courtroom.

For the reasons set forth below, we conclude that under the circumstances of this case, Boffen's flight from the courtroom did not constitute the crime of first degree escape under Article 27, Section 137, because he was not within the actual or constructive custody of a place of confinement within the meaning of the statute.

## II. Discussion

█ Boffen contends that he did not commit the crime of first degree escape when he ran from the Wicomico County

---

3. Petitioner set forth the questions in his Petition as follows:

1. Is an individual on bail in constructive custody in a place of confinement, and thus, in custody within the meaning of Maryland Code, Article 27, Sections 136 and 137 (first-degree escape)?

2. Can an individual be in the constructive custody of the Division of Correction, and thus be guilty of first degree-escape, if he has not been in actual custody?

3. Was the trial court erroneous in convicting Mr. Boffen of first-degree escape on the theory that he was in the constructive custody of either the local detention center or the Division of Correction?

We have consolidated and rephrased these questions in order to better facilitate our discussion.

courtroom during sentencing. In support of that contention, Boffen claims he was not in the actual or constructive custody of a place of confinement when he fled. Specifically, Boffen argues that, contrary to the conclusion of the Circuit Court and Court of Special Appeals, no "constructive custody in the Division of Correction can exist where there has never been any imprisonment, that is, no *actual* physical custody in any of its 'place[s] of confinement ....'" The State, on the other hand, asserts that "[o]nce sentence is imposed, defendants like ... Boffen are in constructive custody until physically restrained by the authorities." Thus, the State maintains that Boffen committed first degree escape because he was in the constructive custody of the Division of Correction (hereinafter "DOC") right after the original sentencing judge stated, "The sentence under count number one is fifteen years to the Division of Correction." For the following reasons, we conclude that Boffen did not commit the crime of first degree escape when he fled.

First degree escape is a statutory crime in Maryland, and at the time of Boffen's departure from the courtroom on November 9, 2000, it was set forth in Article 27, Section 137 of the Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.). Section 137(a) provides that "[a] person may not knowingly escape from a place of confinement." A person violating Section 137 is "guilty of the felony of escape in the first degree and on conviction is subject to a fine not exceeding $20,000 or imprisonment not exceeding 10 years or both." The statute does not define "escape," but Section 136(b) provides that "'[e]scape' retains its judicially determined meaning." The Committee to Revise Article 27,[4] in its annotation to Section 136, in explanation, suggests that "[t]he definition of escape is intended to include the case law interpreting former Art. 27, § 139."[5]

---

**4.** Unlike Code revision bills, which make only stylistic revisions to the Code, bills emanating from recommendations from the Article 27 Committee are usually substantive in nature.

**5.** Section 139 stated:

Hence, we turn to case law to determine whether Boffen

(a) *Escape; sentence therefor; places of confinement.*—(1) If any individual who is legally detained in the State penitentiary or a jail, house of correction, reformatory, station house, or other place of confinement in this State or who is committed to the Alcohol and Drug Abuse Administration for examination or inpatient treatment escapes, the individual is guilty of a felony and on conviction by the circuit court for the county in which the escape takes place, is subject to confinement in the State penitentiary or a jail or house of correction for an additional period not exceeding 10 years. The sentence imposed under this subsection shall be consecutive to any sentence which was being served at the time of the escape, or any sentence which had been imposed but was not yet being served at the time of sentencing on the escape. A sentence imposed under this subsection may not be suspended.

(2)(i) The following are places of confinement for the purposes of this section:

1. Detention centers and youth centers operated by the Department of Juvenile Justice;

2. The programs for committed delinquent or detained youth at the Charles H. Hickey, Jr. School, the Thomas O'Farrell Youth Center, the Doncaster Facility, and the Victor Cullen Center; and

3. The programs for committed delinquent youth operated by the Department of Juvenile Justice at the Cheltenham Youth Facility. (ii) The sentence for escape from a facility designated in this paragraph that does not involve an assault may not exceed confinement for 3 years.

(3) If any individual escapes from a facility of the Department of Health and Mental Hygiene after commitment as incompetent to stand trial or not criminally responsible, the individual is guilty of a felony and on conviction is subject to confinement in the State penitentiary or a jail or house of correction for a period not exceeding 10 years.

(b) Expenses.—An escapee who is convicted under subsection (a)(1) of this section is liable for all expenses incurred in the return of the escapee to the jurisdiction of the Division of Correction, State penitentiary, or a jail, house of correction, reformatory, station house, other place of confinement in this State, or the Alcohol and Drug Abuse Administration. The Commissioner, sheriff, or director of the appropriate facility shall notify the returned escapee of any charges. A hearing shall be granted to any returned escapee who wishes to challenge the reasonableness of the charges. The Commissioner, sheriff, or director of the appropriate facility may establish appropriate rules, regulations, and procedures for charging an escapee with expenses, collecting those expenses, and for hearings to challenge those expenses.

(c) *Aiding Escape.*—A person who aids in the escape of the individual under this section is guilty of a felony and on conviction by the circuit court for the county in which the escape takes place is subject to imprisonment not exceeding 10 years.

committed the crime of escape.

This Court had refined the "judicially determined meaning" of escape in *Farris v. State,* 351 Md. 24, 716 A.2d 237 (1998). There, we declared that, "in order to come within the ambit of Article 27, § 139, the escapee must have been legally detained in 'the State penitentiary or a jail, house of correction, reformatory, station house, or other place of confinement in this State or ... to the Alcohol and Drug Abuse Administration for examination or inpatient treatment.'" *Id.* at 29, 716 A.2d at 240. Then, we explained that "[t]he prisoner must ... 'escape.'" *Id.* Although "escape" was not defined in the statute, we cited our prior decision in *Stewart v. State,* 275 Md. 258, 273, 340 A.2d 290, 298 (1975), for the proposition that, "[t]he physical act of escape is the unauthorized departure from lawful custody." *Id.* "Custody," we observed, "may be actual or constructive." Id. We interpreted Section 139 to "prescribe[] 'two modes of committing a single offence, i.e., escaping from the institution itself—from within the walls of the prison—or escaping from the bounds where [the prisoner] had been assigned.'" *Id.* at 33, 340 A.2d 290, 716 A.2d at 242 (quoting *Stewart,* 275 Md. at 271, 340 A.2d at 297).

■ Thus, to commit the crime of first degree escape in Maryland, one must, without authorization, depart from the actual or constructive custody of a place of confinement. Consequently, we must determine whether Boffen was in the actual or constructive custody of a place of confinement right after the original sentencing judge stated, "The sentence under count number one is fifteen years to the Division of Correction." It was at that moment that Boffen interrupted the judge and fled from the courtroom.

## A. Actual Custody

■ We begin our analysis by determining whether Boffen was in the "actual custody" of a "place of confinement" for purposes of first degree escape. For the following reasons, we conclude that he was not. As we observed in *Farris,* "actual custody" exists when an individual is confined to "the

institution itself ... within the walls of the prison." 351 Md. at 33, 716 A.2d at 242. The institution within which one is actually confined, moreover, must be a legislatively designated "place of confinement."

There is no question that at the time of Boffen's departure, he was not within the walls of the Detention Center or any of the correctional facilities administered by the DOC. He was, however, "within the walls" of the Wicomico County courtroom. Whether he was "confined" within the courtroom during sentencing is an issue we need not reach because, as we shall explain below, a courtroom, in any event, is ordinarily not a "place of confinement."

A "place of confinement," as defined in Article 27, Section 136(c), is:

(1) A correctional facility as defined in § 1–101 of the Correctional Services Article;

(2) A place identified in a home detention order or agreement;

(3) A facility of the Department of Health and Mental Hygiene;

(4) A detention center for juveniles or a facility for juveniles listed in Article 83C, § 2–117(a)(2) of the Code; or

(5) Any other facility in which a person is confined under color of law.

A courtroom is not included within the first four listed places of confinement, and there is no indication in the language of the statute that the legislature intended to include a courtroom as "[a]ny other facility in which a person is confined under color of law," at least under the facts presented in this case.[6] Pursuant to the rule of *ejusdem generis:*

_____

6. We need not address here whether a person, who flees from a courtroom after a sentence of incarceration has been fully and finally pronounced and the person has been remanded to the custody of the sheriff or other appropriate law enforcement officer, may be properly charged with and convicted of first degree escape. In this case those conditions have not occurred.

[W]here general words in a statute follow the designation of particular things or classes of subjects or persons, the general words will usually be construed to include only those things or persons of the same class or general nature as those specifically mentioned. This rule is based on the supposition that if the Legislature had intended the general words to be considered in an unrestricted sense, it would not have enumerated the particular things.

*Degren v. State,* 352 Md. 400, 427, 722 A.2d 887, 900 (1999) (citation omitted)

■ The particular places of confinement specified prior to number five in the General Assembly's list are of a different "class or general nature" than a courtroom. A courtroom, unlike correctional facilities, detention centers, and the like, ordinarily is not intended as a place to hold, treat, or attempt to reintegrate prisoners into society. "It is a fundamental principle of statutory construction that criminal statutes are to be construed narrowly so that 'courts will not extend the punishment to cases not plainly within the language used.' " *Farris,* 351 Md. at 36, 716 A.2d at 243 (quoting *Tapscott v. State,* 343 Md. 650, 654, 684 A.2d 439, 441 (1996))(internal citation omitted). Moreover, " 'If the law is to be broadened . . . it should be modified by the Legislature, not by this Court.' " *Id.* at 37–38, 716 A.2d at 244 (quoting *Briggs v. State,* 348 Md. 470, 483, 704 A.2d 904, 911 (1998)). Had the Legislature intended to explicitly include a courtroom within its definition of a "place of confinement," it certainly could have attempted to do so.

## B. Constructive Custody

■■ Nor are we persuaded that Boffen was in the "constructive" custody of a "place of confinement" when he fled from the Wicomico County courtroom. The judge presiding over the escape trial concluded that Boffen had been in the "constructive custody [of the Detention Center], at least from the time of his conviction forward," and further concluded that the Detention Center is a "place of confinement." The Court of Special Appeals declined to base its affirmance of Boffen's

conviction for escape on this theory, instead concluding that Boffen was in the constructive custody of the DOC when the sentencing judge discussed Boffen's sentence on the first count. Similarly, the State concedes that Boffen was not in the constructive custody of the Detention Center when he fled.[7]

The State does contend, however, that Boffen was in the constructive custody of the DOC. That custody, according to the State, was triggered when the original sentencing judge stated, "The sentence under count number one is fifteen years to the Division of Correction." We disagree.

 Because escape is a statutorily prescribed crime, we shall employ canons of statutory interpretation to determine whether Boffen was in the constructive custody of a place of confinement when he fled from the courtroom. "[T]he basic premise of statutory interpretation is to 'ascertain and effectuate the intention of the legislature.'" *State Ethics Commission v. Antonetti*, 365 Md. 428, 450–51, 780 A.2d 1154, 1168 (2001)(quoting *Tipton v. Partner's Management Co.*, 364 Md. 419, 434, 773 A.2d 488, 497 (2001)). In discerning legislative intent, "we look first at the language of the relevant statutory provision or provisions." *Chen v. State*, 370 Md. 99, 106, 803 A.2d 518, 521–22 (2002). " 'If the true legislative intent cannot readily be determined from the statutory language alone, however, we may, and often must, resort to other recognized indicia—among other things ... the legislative

---

7. The State and Court of Special Appeals, we note, wisely rejected the Circuit Court's conclusion that Boffen was in the constructive custody of the Detention Center when he fled. Prior to his conviction, Boffen had been free on bail. On March 31, 2000, the Circuit Court conducted a bail review hearing and ordered that bail be set at $15,000. The next day, the Commissioner for Wicomico County signed a bail bond for that amount. On April 4, 2000, a "Release from Commitment" was filed with the Circuit Court, commanding the Detention Center to "release [Boffen] subject to the following conditions/restrictions: NONE." When Boffen was convicted, the Circuit Court ordered that he remain free on bail pending sentencing. As mentioned above, the Detention Center had been ordered to release Boffen unconditionally. Thus, he was not in the constructive custody of the Detention Center when he later fled from the sentencing hearing in the Wicomico County courtroom.

history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it. . . .'" *Goldberg v. Miller*, 371 Md. 591, 602, 810 A.2d 947, 953 (2002)(quoting *Witte v. Azarian*, 369 Md. 518, 525–26, 801 A.2d 160, 165 (2002)).

We return to the Committee Note to Section 136, which, as previously mentioned, explains that "[t]he definition of escape is intended to include the case law interpreting former Art. 27, § 139." As examples of such case law, the Note then specifically refers to our decisions in *Stewart v. State*, 275 Md. 258, 340 A.2d 290 (1975) and *Best v. Warden*, 235 Md. 633, 634, 201 A.2d 490–91 (1964), as well as the decision of the Court of Special Appeals in *Beasley v. State*, 17 Md.App. 7, 299 A.2d 482 (1973). A reading of those cases and others, in addition to viewing the evolution of the escape statute and its legislative history, reveals that the Legislature, in 1999, recodified Art. 27, Section 139 for the purpose, in part, of adopting the judicially defined concept of "constructive custody" within the law of escape. We shall begin our explanation of this process by turning to a discussion of the cases referred to in the Committee Note "interpreting former Art. 27, § 139."

In *Best v. Warden*, 235 Md. 633, 201 A.2d 490 (1964), Best was transported from the penitentiary to a hospital for medical treatment. At the hospital, while a guard that was accompanying Best went to make a telephone call to arrange for transportation back to the penitentiary, Best "walked off." *Id.* In his petition for post conviction relief to this Court, Best alleged that "he did not commit the crime of escape, as defined in Code (1957), Art. 27, Sec. 139, since he was left unguarded and the hospital was not a place of confinement." *Id.* 201 A.2d at 491. In rejecting Best's argument, we explained that *Johnson v. Warden*, 196 Md. 672, 75 A.2d 843 (1950) was applicable, where we held:

> [A] prisoner was legally confined in the State Reformatory within the meaning of what is now Art. 27, sec. 139, even though he was allowed to work outside, unguarded, on a private farm, and that, when he escaped from the farm, he

was subject to punishment for escape from the Reformatory.

*Id.* at 634–35, 201 A.2d at 491. "The same reasoning," we declared, "applies to the instant case, and thus the applicant was properly convicted of escape under Art. 27 sec. 139." *Id.* at 634, 201 A.2d at 491.

Eleven years later, in *Stewart v. State,* we addressed "the question of where venue may lie for the trial of the crime of escape under Maryland Code (1957, 1971 Repl.Vol. [1974 Cum.Supp.] ) Art. 27, § 139." 275 Md. at 259, 340 A.2d at 290, 291 (1975). During the course of that inquiry, we surveyed a number of cases addressing the doctrine of constructive custody. One of those cases was *Taylor v. State,* 229 Md. 128, 130, 182 A.2d 52, 53 (1962), in which the defendant pleaded guilty and was convicted of escape for departing from "a work detail at the University Hospital . . . ." Prior to his assignment at the hospital, Taylor had served 19 months of a three year sentence in the House of Correction, after which he was transferred to the Sandy Point Correctional Camp. *Id.* at 129–30, 182 A.2d at 53. On appeal to this Court, Taylor argued that the facts were not sufficient to support his conviction for escape from the House of Correction under Section 139 because he was not confined at that institution when he departed. *Id.* at 129, 131, 182 A.2d at 53, 54. In rejecting that argument, this Court, although not using the term "constructive custody," nonetheless relied on that doctrine to find that, when Taylor departed from the hospital, he "continued to be under confinement [at the Sandy Point Correctional Camp]." *Id.* at 130, 182 A.2d at 53. Because the correctional camp was "merely an adjunct of the House of Correction," we then concluded that his "escape []from [the correctional camp] . . . constitute[d] escape from the House of Correction." *Id.*

Another case addressing constructive custody discussed by the *Stewart* court was *Ford v. State,* 237 Md. 266, 205 A.2d 809 (1965). There, the defendant was serving a sentence "at Hagerstown" for a motor vehicle offense when, under guard by a Maryland Correctional Institution Officer, he was transported to the Criminal Court of Baltimore to stand trial on

burglary and larceny charges. *Id.* at 267–68, 205 A.2d at 810. When the officer released Ford from his handcuffs to get a drink of water, Ford "broke away from his guard and ran out of the courtroom." *Id.* at 268, 205 A.2d at 810. He was later convicted of escape. *Id.* Appealing that conviction, Ford argued, among other things, that he could not be guilty of escape because he was not "within the confines of the prison walls." *Id.* at 270, 205 A.2d at 812. We rejected the argument that Ford had to be in actual custody. Although we did not employ the term "constructive custody" in our opinion, we recognized its essence by declaring that "Maryland draws no distinction between an escape from within the prison walls and one effected when the prisoner, while still in legal custody, was physically outside the prison area." *Id.*[8]

In addition to those prior opinions from this Court, the Committee Note to Section 136 of Article 27 also refers to the decision of the Court of Special Appeals in *Beasley v. State*, 17 Md.App. 7, 299 A.2d 482 (1973). There, Beasley was convicted of a narcotics violation, sentenced to the custody of the Commissioner of Correction, and then transferred to the Maryland Correctional Camp Center at Jessup. *Id.* at 9–10, 299 A.2d at 483–84. While on a work release program from the Camp Center, Beasley fled, was later apprehended, and was then convicted for escape under Code, Art. 27, § 139. *Id.* On appeal to the Court of Special Appeals, Beasley argued that, rather than being charged under Section 139, which is a felony, he should have been charged with a misdemeanor

---

**8.** The *Stewart* Court also discussed constructive custody cases from the Court of Special Appeals. *See Shifflett v. State*, 4 Md.App. 227, 242 A.2d 182 (1968)(affirming conviction of escape under Section 139 when the defendant was committed to the Baltimore County Jail under lawful sentence and assigned to work as a "trusty" in the Baltimore County magistrate's court, from which he "took leave"); *Robinson v. State*, 18 Md.App. 438, 441–42 306 A.2d 624, 626 (1973)(stating that Section 139 "is a broadly based statute embracing within its purview *all escapes* from lawful confinement, whether the escape was initiated from within or without the walls or other boundaries of a penal facility; whether the confinement was actual or constructive; whether it was effected with or without force, and without regard to the circumstances of confinement if the detention was under color of law").

under Section 700A of Article 27. *Id.* at 9, 299 A.2d at 483. That Section specifically concerned work release programs and stated in part that, " 'if any prisoner released from actual confinement under a work release plan shall willfully fail to return to the place of confinement so designated at the time specified in such plan, he shall be guilty of a misdemeanor and, upon conviction, shall be subject to the penalties provided in § 139 of Article 27.' " *Id.* at 11, 299 A.2d at 484 (internal quotations omitted). Relying on *Shifflett,* 4 Md.App. at 230, 242 A.2d at 184, the Court of Special Appeals explained that, "the escape of a prisoner while in constructive custody under a work release program constitute[s] an escape from a place of confinement in violation of § 139." *Beasley,* 17 Md.App. at 11, 299 A.2d at 484.

In addition to the cases referred to by the Committee to Revise Article 27 as cases "interpreting former Art. 27 § 139," more recently we engaged in an extensive discussion of constructive custody in *Farris,* a case also interpreting Section 139. The issue presented was "whether the failure to report to the Allegany County Detention Center for weekend service of a prison sentence constitute[d] the crime of escape as defined by Md.Code (1957, 1996 Repl.Vol., 1997 Supp.) Art. 27, § 139." *Farris,* at 27, 716 A.2d at 239. Farris was convicted in the District Court of Maryland, sitting in Allegany County, of possession of a controlled dangerous substance. *Id.* He was sentenced to ninety days incarceration, all suspended, with two years probation. *Id.* After violating probation, Farris was sentenced to ninety days incarceration with sixty days suspended and three years probation, thirty days to be served on weekends. *Id.* According to the District Court's commitment record, the specific terms of his sentence were, "[T]otal time to be served is 30 days, to run concurrent with any other outstanding or unserved sentence and begin on May 3, 1996. Weekend service of sentence from 11 a.m. Friday till 11 a.m. Sunday for 15 consecutive weekends." *Id.*

Farris began serving his sentence on Friday, May 3, 1996, but on Friday, June 21, 1996, he failed to appear at the local detention center. *Id.* Consequently, the State charged him

with escape, and after a bench trial, he was found guilty of that charge. *Id.* at 27–28, 716 A.2d at 239. Farris noted an appeal to the Court of Special Appeals, which affirmed. *Id.* at 28, 716 A.2d at 239. We granted certiorari and reversed, concluding that under the circumstances of the case, Farris's failure to report on that Friday for weekend service did not constitute the crime of escape. *Id.* at 28, 38, 716 A.2d at 239, 244.

With respect to constructive custody, "[o]ur cases have recognized," we noted, "that a person, lawfully sentenced and committed to a jail or other place of confinement, may commit the physical act of escape within the meaning of Article 27, § 139 even though he or she was actually beyond the physical confines of the institution." *Id.* at 30, 716 A.2d at 241 (discussing our holdings in *Johnson, Taylor, Best,* and *Ford*).

In *Farris,* we gleaned from these cases the following conclusion regarding the concept of constructive custody within the law of escape: "[W]hen a person remains in lawful custody, departure from the boundaries which restrict that person's movements may constitute an escape." 351 Md. at 32, 716 A.2d at 241–42. Stated more concretely, "[a] penal institution maintains 'constructive' custody when an individual is temporarily permitted to leave while still lawfully committed to that institution." *Id.* at 29–30, 716 A.2d at 240. Further, "[p]risoners who remain in constructive custody are, at all times," we stated, "lawfully under sentence, committed to a specific institution, *and* subject to restrictions that define the boundaries from which an unauthorized departure constitutes an escape." *Id.* at 34, 716 A.2d at 242.

Applying these principles to the circumstances that were before us, we declared "[t]he dispositive issue" to be whether Farris's "commitment to the Allegany Detention Center for weekend service of his sentence constitute[d] 'custody' or legal detention in a place of confinement during the weekday period." *Id.* at 33, 716 A.2d at 242. From the following facts, we concluded that such custody did not exist during the week. "During the week, [Farris] lived at his home. He received no

credit against his sentence for the time spent at his home, and
... he was free from any restriction on his activity or move-
ments during the time he was away from the detention
center." *Id.* at 34–35, 716 A.2d at 243. "In short, there were
no bounds or limits on his activities." *Id.* at 35, 716 A.2d at
243. Thus, "[b]ecause [Farris] was not in custody, he did not
leave or physically depart from any place of confinement." *Id.*
Consequently, his "failure to report to the detention center
... for the weekend incarceration [did] not constitute 'escape'
within the meaning of the statute." *Id.*

Our decision in *Farris*, in part, prompted the Legislature to
amend Section 139 of Article 27 in 1999. The Senate Judicial
Proceedings Committee explained in a Floor Report to Senate
Bill 355 (which was "identical to House Bill 463") that the 1999
revision "was prompted by two events." "First, the Correc-
tional Services Article Code Revision Committee requested
the Article 27 Committee to revise the laws concerning escape
as they applied to the individual counties concerning tempo-
rary leave and home detention." "Secondly," the Committee
explained,

> the Court of Appeals in the case of *Farris v. State*, 351 Md.
> 24, 716 A.2d 237 (1998) held that in Allegany County the
> failure of an individual to report for service of a week-end
> sentence was not escape or any other violation of criminal
> law. This reasoning applies to many of the other counties
> as well. This bill solves these problems by making one
> uniform provision applicable to temporary leave and home
> detention in all counties. Secondly, it solves the *Farris*
> problem by making the failure to report to a correctional
> facility as required by a court order an escape.

The Floor Report goes on to state:

> [House Bill 463] further codifies existing law concerning
> escape while on leave or otherwise not in a correctional
> facility. Although the current statute only refers to escape
> from a correctional facility, case law has adopted the con-
> cept of constructive custody to apply this statute to persons

who escape while on leave or are otherwise outside of the correctional facility (e.g., in a hospital).

Finally, the Floor Report declares

This bill explicitly covers persons on leave. By defining escape to retain its judicially determined meaning, it also includes those taken out of a correctional facility for other reasons, such as to a hospital or court.

By retaining the judicially determined meaning for escape and recognizing that individuals must have been within the "confines" of a facility or outside the walls of a correctional facility while on leave, the Legislature recognized that in prior cases, the individuals convicted of escape under the doctrine of constructive custody were first committed to and physically confined within a place of confinement before being allowed to depart for limited purposes, such as for work release or to receive medical attention at a hospital. We, therefore, conclude that for an individual to commit the crime of first degree escape within the concept of constructive custody, that individual must have been initially committed to and physically confined within a place of confinement. In other words, we agree with Boffen's contention that a place of confinement must first have actual custody over a person before it can have constructive custody. Because Boffen was neither committed to nor physically confined within any of the institutions of the DOC before he fled from the Wicomico County courtroom, we conclude that he did not escape from the constructive custody of a place of confinement.[9]

---

**9.** In addition, Boffen was not yet committed to the DOC when the original sentencing judge stated, "The sentence under count number one is fifteen years to the Division of Correction." As the judge presiding over the escape trial correctly observed, no statement remanding Boffen to custody had been made by the original sentencing judge.

Further, Boffen left the courtroom before sentencing was complete. Certainly, the original sentencing judge could have suspended the 15 year sentence. According to Maryland Code, Art. 27 § 639(a)(1)(1957, 1996 Repl.Vol.), "[t]he courts may suspend sentence generally or for a definite time, and may make such orders and impose such terms as to

The State, however, directs our attention to the decision of the Kansas Court of Appeals in *State v. Briggs*, 48 P.3d 686, 687 (2002). There, Briggs appeared for a revocation of probation hearing, after which the hearing judge revoked his probation and ordered the imposition of his original sentence. *Id.* at 686–87. The judge told Briggs, "Have a seat in the hallway, Mr. Briggs, we'll call for an officer. Consider yourself in custody." *Id.* at 687. After those instructions, Briggs fled the courthouse, was recaptured, and eventually was convicted of "aggravated escape" under KAN. STAT. ANN. § 21–3810(a)(1)(2001), which provides in relevant part, that "[a]ggravated escape from custody is: (a) Escaping while held in lawful custody (1) upon a charge or conviction of a felony . . . ."

Briggs appealed from that conviction, and the Court of Appeals of Kansas affirmed. In so doing, the Kansas court stated that the issue was whether the hearing judge's "order to Briggs, after revoking his probation, 'Have a seat in the hallway, Mr. Briggs, we'll call for an officer. Consider yourself in custody.' put Briggs in lawful custody for purposes of a conviction for aggravated escape." *Id.* at 688. According to Kansas case law, the court noted, " '[c]ustody contemplates an intent on the part of prison officials to exercise actual or constructive control. . . . The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way.' " *Id.* at 688 (quoting *State v. Pichon*, 15 Kan.App.2d 527, 811 P.2d 517, 524

---

costs, recognizance for appearance, or matters relating to the residence or conduct of the convicts as may be deemed proper . . . ."

Finally, Boffen was also not subject "to restrictions that define[d] the boundaries from which an unauthorized departure [would] constitute [] an escape" when he fled from the courtroom. *Farris*, 351 Md. at 34, 716 A.2d at 242. The institution that sets such restrictions must be a "place of confinement" as defined in the statute. Here, that would include the Detention Center or the institutions of the DOC, but neither of those places had yet prescribed where Boffen could go, when he could go there, how he could get there, or any other such restraints on his freedom. As we stated in *Farris*, "[w]ithout some limits, which may be very narrow or somewhat broad, there can be no custody." *Id.* at 33, 716 A.2d at 242.

(1991)). The court then concluded that "[c]ertainly, [the hearing judge's] intention was to place Briggs in custody for transportation to the county jail." *Id.* at 689. "Further," the court observed, "Briggs was in the custody of the court for probation revocation purposes, and the court had never released him from that custody." *Id.* Finally, the court concluded that the hearing judge "exercised actual or constructive control over Briggs and restrained his liberty by ordering him to the hall to await law enforcement officials." *Id.* "Briggs was in custody," therefore, under the applicable Kansas statutes. *Id.*

That case is readily distinguishable because the Kansas statute includes a definition of "custody" not found in Maryland's statute. KAN. STAT. ANN. § 21–3809(b)(1) defines custody broadly. It states in part that custody "means arrest" and "detention" in or "commitment" to various specified institutions such as "a facility for holding persons charged with or convicted of crimes," a "facility for holding persons adjudicated as juvenile offenders" or "a hospital or other facility pursuant to court order." *Id.* Custody also includes, according to the statute, "any other detention for law enforcement purposes." *Id.* Custody is also defined under the Kansas statutory scheme as "the restraint of a person pursuant to an arrest or the order of a court or magistrate." *Id.* § 22–2202(9). Under this broad statute, the trial court told the defendant that he was in custody. Therefore, the States's reliance on *Briggs* is misplaced; the provisions of Maryland's first degree escape statute are not so broad.[10]

---

**10.** For second degree escape, which Boffen was not charged with or convicted of, the Maryland statute does contain similar language. Art. 27, § 137A (a)(2) declares that, "[a] person may not knowingly fail to obey a court order to report to a place of confinement." This language was added by the legislature in 1999 in response to our decision in *Farris. See* Floor Report, Senate Judicial Proceedings Committee, House Bill 463 (1999). The language is "intended to apply to an order to report for service of a weekend or other periodic sentence." Note of Committee to Revise Article 27, *printed in* Code, Art. 27 § 137A. There is no such sentence at issue in the instant case. Moreover, the District Court in *Farris,* unlike the court in the instant case, issued a "Commit-

Another escape case, we note, dealing with a defendant who has fled from a courtroom after sentencing but before actual confinement in any penal institution is *United States v. Peterson*, 592 F.2d 1035 (9th Cir.1979). There, the United States Court of Appeals for the Ninth Circuit upheld Peterson's conviction for escape under Title 18, United States Code, Section 751(a). *Id.* That statute stated in part that "[w]hoever escapes or attempts to escape . . . from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate . . . shall . . . be fined not more than $5,000 or imprisoned not more than five years, or both . . . ." Having pled guilty and having been sentenced for a violation of a firearms law, Peterson moved for a stay of execution of the sentence. *Id.* at 1035–36. In denying that motion, the trial court declared, "[h]e will commence his sentence now," and because no marshal was in the courtroom, the court ordered Peterson's counsel to accompany Peterson to the marshal's office immediately. *Id.* at 1036. While on route, Peterson fled, and was subsequently convicted of escape. *Id.* In affirming that conviction, the Ninth Circuit noted that custody "can result from the willful failure to comply with a lawful order to custody orally given." *Id.* at 1037. The court also noted that in light of the trial court's announcement that Peterson would "commence his sentence now," a person of ordinary intelligence and understanding would know that he was not free to leave under 18 U.S.C. § 751(a) because he was in "custody under or by virtue of Any process issued under the laws of the United States by [a] court, [or] judge." *Id.* at 1037.

Unlike the federal statute, however, Sections 136 and 137 of Article 27 do not include provisions for first degree escape

---

ment Record" declaring when he was to serve his weekend sentence. 351 Md. at 27, 716 A.2d at 239. Also, Farris actually began serving that sentence, and then stopped. *Id.* Unlike Farris, when Boffen fled, he was not yet committed, and had been released from the only place to which he had been confined, i.e. the Wicomico County Detention Center.

when a "court, judge, or magistrate" issues process.[11] Indeed, as discussed above, a person does not "escape" under Maryland law unless he or she departs from the actual or constructive custody of a "place of confinement." [12]

In conclusion, we hold that Boffen's actions did not constitute the crime of first degree escape under Maryland law. This is so because Boffen, at the time he fled the courtroom, was not in the actual or constructive custody of a place of confinement. We shall therefore order that his conviction for first degree escape be reversed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WICOMICO COUNTY.*

---

11. *See, supra,* note 10.

12. ˙ The *Peterson* case is also helpful in determining whether Boffen *"knowingly "* escaped from a place of confinement" under Section 137 of Article 27 (emphasis added). The Ninth Circuit, after observing that custody may result from "the willful failure to comply with a lawful order to custody lawfully given," found that in light of the trial court's pronouncement that Peterson's sentence was to begin "now," that "a person of ordinary intelligence and understanding would know that he was not free to leave; that he was[,] [under 18 U.S.C. 751(a)] [,] in 'custody under or by virtue of any process issued under the laws of the United States by (a) court, (or) judge.' " *Id.* at 1037. The same cannot be said of the present case, even if Maryland's escape statute provided that a person is in "custody" for purposes of escape when a "court, judge, or magistrate" issues process. The sentencing judge here merely stated that, "[t]he sentence under count number one is fifteen years to the Division of Correction." That is not enough, in our opinion, for a person of ordinary intelligence and understanding to know at that moment that he or she was in custody.